SCOTT W. EISENLOHR *v.* PAMELA EISENLOHR
(AC 33390)

Gruendel, Beach and Schaller, Js.

Argued March 19—officially released May 8, 2012

*Pamela Eisenlohr*, pro se, the appellant (defendant).

*Erich H. Gaston*, with whom, on the brief, was *Patrick J. Heeran*, for the appellee (plaintiff).

*Dina M. Menchetti*, guardian ad litem for the minor child.

*Opinion*

GRUENDEL, J. The self-represented defendant, Pamela Eisenlohr, appeals from the judgment of the trial court granting the postjudgment motion to modify a custody order filed by the plaintiff, Scott W. Eisenlohr. The defendant raises a bevy of claims that do not merit discussion. She further claims that the court (1) abused

its discretion in modifying the custody order, (2) violated her constitutional right to due process, (3) improperly entered orders restricting her ability to seek modification of its custody and parenting access orders and (4) improperly predicated its decision in part on the theory known as parental alienation syndrome. We affirm the judgment of the trial court.

The record discloses the following undisputed facts. The parties married in 1991, and one child was born of the marriage.[1] Following the subsequent breakdown of their marriage, the parties voluntarily entered into a comprehensive separation agreement that the court incorporated into its judgment of dissolution.[2] It provided, inter alia, that the parties would have joint legal custody of their minor child, whose primary residence would be with the defendant. On March 15, 2005, the court dissolved their marriage, finding that it had broken down irretrievably without attributing fault to either party.

On July 28, 2010, the plaintiff moved to modify the custody order, alleging that "there has been a change in circumstances in that the defendant has continually and unilaterally denied the plaintiff his parenting access, without cause or justification. The defendant's actions have been and are currently subject to postjudgment motion practice. . . . [The] defendant has a history of alienating the minor child from the plaintiff and denying the plaintiff his parenting rights without either reprimand or repudiation. Since the judgment of dissolution, [the] plaintiff has filed approximately fourteen . . . motions for contempt against the defendant seeking to enforce his visitation rights with the minor child. . . . The defendant's actions are detrimental to the

---

[1] Pursuant to Practice Book § 67-13, the guardian ad litem for the minor child filed a statement adopting the brief of the plaintiff in this appeal.

[2] The defendant was represented by counsel at that time.

minor child and are not in [her] best interests . . . ." For those reasons, the plaintiff requested sole physical custody of the minor child. The plaintiff thereafter filed motions for contempt and an order regarding parenting access. Following a hearing, the court, *Ginocchio, J.,* on December 1, 2010, granted the latter two motions, finding that the defendant wilfully had violated the existing parenting orders. The court also found that the defendant had engaged in actions harmful to the best interests of the minor child, and therefore issued temporary orders granting the plaintiff sole physical custody pending further proceedings on his motion to modify the custody order.

The defendant subsequently filed motions for compliance and modification that sought to lift the temporary orders and to return physical custody of the minor child to her. Following three days of hearings, the court, *Danaher, J.,* on March 24, 2011, denied the defendant's motions and granted the plaintiff's July 28, 2010 motion to modify the custody order. In its oral ruling, the court found that the minor child was in a healthier environment since physical custody was transferred to the plaintiff, stating that she "has benefited significantly from living exclusively with the plaintiff: emotionally, educationally and physically. The plaintiff has provided the minor child with appropriate structure and has made exceptional efforts to try to not only be a caring, effective father, but also to support an appropriate relationship between the minor child and [the defendant]."

By contrast, the court expressly found that the defendant was "not truthful."[3] The court further found that "[t]he defendant has not demonstrated any meaningful effort to have an appropriate relationship with either the minor child or the plaintiff. Throughout these proceedings, the defendant seldom misses an opportunity

---

[3] The defendant repeatedly exercised her fifth amendment right against self-incrimination during her testimony on March 23, 2011.

to criticize the plaintiff for any perceived shortcoming, often focusing on the most trivial of issues. . . . Despite the [temporary] orders issued by the court . . . the defendant has continued to wrongfully engage in efforts to manipulate the minor child by engaging in prohibited adult conversations with the minor child. I base this finding not only on the testimony by the guardian ad litem, but also by the court's review of recorded telephone conversations between the defendant and the minor child, which were introduced by the defendant herself. . . . The defendant has been found to have engaged in wrongful manipulation of the minor child by, among others, the following unbiased parties: the family relations counselor, the guardian ad litem, the department of children and families [department], and the *Hon. James* [P.] *Ginocchio.* The defendant, as recently as yesterday, rejected all of the foregoing opinions. In summary, the defendant is in complete denial. . . .

"The defendant fails to recognize that she is manipulative, and her ongoing course of manipulative conduct has had the following effects that are adverse to the child's best interest. The resources of the family have been severely tested, thus ensuring that those resources are not available to be used for the benefit of the minor child. Second, the defendant has filed . . . numerous pleadings and complaints that have resulted in unnecessary litigation. Further, the defendant has frequently interacted with the minor child in an inappropriate manner and in an effort to manufacture a basis for some of her filings. Third, the defendant has caused the initiation of baseless [department] investigations, the effect of which have been (1) to subject the minor child to needless interviews that have had serious adverse effects upon her emotional well-being; (2) to place the plaintiff's employment at risk, and the consequences of an adverse impact on the plaintiff's employment would

be to diminish the plaintiff's resources further, which, in turn, would be greatly detrimental to the minor child; and (3) to waste valuable [department] resources that were used to investigate meritless claims. Fourth, to date, the only [department] investigation that has ended in a substantiated allegation is the most recent investigation that concluded that the defendant visited emotional abuse upon the minor child. Subsequent to the entry of temporary orders on December 1, 2010, the defendant has made repeated efforts to circumvent those orders."

Days later, the court issued a twenty-one page written ruling on the plaintiff's motion to modify the custody order that contained extensive orders. In that ruling, the court found both that the plaintiff met his burden of proving a substantial change in circumstance warranting the change in the primary residence of the minor child and that it was in the minor child's best interests that the plaintiff have sole legal and physical custody of her. The court emphasized that when it "temporarily gave sole custody to the plaintiff on December 1, 2010, the court found that the defendant had made baseless complaints to the [department], that the defendant was making efforts to cause the minor child to hate [the plaintiff], that the defendant was manipulating the minor [child] for the express purpose of creating evidence that would result in limiting the plaintiff's access to [the minor child], and that the defendant was causing emotional harm to her . . . . [T]he defendant's misconduct continued after the orders were issued on December 1, 2010. . . . The defendant fails to recognize that she is manipulating and damaging her minor child, despite the findings of numerous unbiased parties, all of which findings have been well supported and clearly communicated to her." On that basis, the court ordered that the plaintiff "shall have sole physical custody and legal custody of the minor child."

The court also entered detailed orders regarding the defendant's filing of motions in the matter. With respect to modification of its custody orders, the court ordered as follows: "Because of the defendant's pattern and practice of interfering with the plaintiff's relationship with the minor child, the defendant's refusal to communicate appropriately with the minor child or the plaintiff, and, inter alia, her refusal to foster or support a relationship between the minor child and the plaintiff, sole physical and legal custody of the minor child is hereby vested in the plaintiff, postjudgment. The defendant may only move for modification of the physical and legal custody arrangements once she has completed all additional coparenting classes and/or training recommended by the defendant's therapist. As a further condition precedent to the defendant being able to move for modification, she shall successfully complete an intensive therapy program . . . . Further, as respecting possible modification, because of past issues of the defendant failing to comply with orders of the court; providing token compliance with orders of the court while ignoring the spirit and intent of the orders, including the orders dated December 1, 2010; the defendant's lengthy pattern of contemptuous conduct; the expenses and financial waste caused by the defendant; the substantial financial drain on the resources of the plaintiff and the guardian ad litem caused by the defendant; the pattern of parental alienation; prior false reports of abuse and/or neglect to governmental entities; and the need for repose on the part of the minor child, it is anticipated that in addition to satisfaction of the foregoing conditions, no modification motion is permitted to be filed by [the] defendant regarding the sole physical and/or sole legal custody arrangements, except in the case of the plaintiff's total and permanent disability as determined by the Social Security Administration, unless the following conditions are satisfied:

prior to filing or serving such a modification motion, the defendant shall (a) provide a copy of the proposed motion to the court in Litchfield by lodging the proposed motion with the clerk of the court as well as copies of all supporting evidence to be offered in support of the proposed motion; (b) the court shall determine whether the proposed motion is in good faith and is not vexatious, in bad faith, and/or is not otherwise in the best interests of the minor child; and (c) the proposed motion shall not be served, scheduled, heard, or placed on the calendar if the court determines that the motion does not comport with the foregoing criteria."

With respect to modification of its parenting access orders, the court ordered that "[u]pon a majority recommendation of the supervised parenting access provider, the defendant's therapist and the minor child's therapist, the defendant may move that her parenting access be modified to supervised parenting access by a responsible third party. Such a motion shall not be filed for at least six months from the date of this order." Lastly, the court ordered that "[t]o protect the minor child from further litigation [and] to protect the integrity of the court's judgment . . . [i]n the event that the defendant makes any false representation in [any] proposed motion or supporting documentation, [the defendant] shall be subject to sanctions, attorney's fees and all other remedies available to the court." From that judgment, the defendant appeals.

I

The defendant first claims that the court abused its discretion in modifying the custody order. The authority of the court to modify custody orders is found in General Statutes § 46b-56 (b), which provides in relevant part that "[i]n making or modifying any [custody] order . . . the court shall enter orders . . . that serve the best interests of the child . . . ." Although a court also

"must find that there has been a material change in circumstance since the prior order of the court . . . the ultimate test is the best interests of the child." (Internal quotation marks omitted.) *Kennedy* v. *Kennedy*, 83 Conn. App. 106, 113, 847 A.2d 1104, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004). "The trial court [has] the advantage of observing the witnesses and the parties. Considerable evidence [normally is] presented concerning the activities of the parties since [the rendering of the original judgment]. . . . [W]hether the best interests of the [child] dictate a change of custody is left to the broad discretion of the trial court. . . . A mere difference of opinion or judgment cannot justify the intervention of this court. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) Id. "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Williams* v. *Williams*, 276 Conn. 491, 497, 886 A.2d 817 (2005).

Our review of the record in the present case reveals no abuse of that broad discretion. The record contains ample evidence substantiating the findings of the court and its ultimate conclusion that modification of the custody order was in the best interests of the minor child.

II

The defendant also alleges a violation of her right to due process, contending that she was entitled to a full trial on the plaintiff's motion to modify the custody order, rather than the three day hearing that transpired on March 22 to March 24, 2011. She never raised her constitutional claim before the trial court and has not sought review of that unpreserved claim pursuant to

*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), in this appeal.[4] We therefore decline to entertain the merits of that unpreserved claim. See *In re Jan Carlos D.*, 297 Conn. 16, 20 n.10, 997 A.2d 471 (2010) (declining to review unpreserved due process claim because party did not affirmatively request and adequately brief entitlement to *Golding* review in main brief).

### III

The defendant further contends that the court abused its discretion in fashioning orders that restricted her ability to seek modification of the custody and parenting access orders in the future. We disagree.

It is well established that "[t]he power of a domestic relations court to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. . . . Decision-making in family cases requires a flexible, individualized adjudication of the particular facts of each case . . . ." (Citation omitted; internal quotation marks omitted.) *Taff* v. *Bettcher*, 243 Conn. 380, 387, 703 A.2d 759 (1997). In granting the plaintiff's motion to modify the custody order, the court found that "the defendant has filed . . . numerous pleadings and complaints that have resulted in unnecessary litigation." Moreover, in imposing the aforementioned restrictions on the defendant's ability to file motions for modification, the court expressly indicated that this exercise of its discretion was predicated on "past issues of the defendant failing to comply with orders of the court; providing token compliance with orders of the court while ignoring the spirit and intent of the orders, including the orders dated December 1, 2010; the defendant's lengthy pattern of contemptuous

---

[4] In her reply brief, the defendant concedes that she "could not present to the court an adequate record to review the claim under *Golding* . . . ."

conduct; the expenses and financial waste caused by the defendant; the substantial financial drain on the resources of the plaintiff and the guardian ad litem caused by the defendant; the pattern of parental alienation; prior false reports of abuse and/or neglect to governmental entities; and the need for repose on the part of the minor child . . . ."

This court has expressly condoned the imposition of such conditions on the filing of such motions when the particular circumstances of the case so warranted. See *Strobel* v. *Strobel*, 92 Conn. App. 662, 665, 886 A.2d 865 (2005) (court order imposing restrictions on parties' ability to file any motions or pleadings without prior approval deemed "praiseworthy"); cf. Practice Book § 25-26 (g) (authorizing court to "order that any further motion for modification of a final custody or visitation order shall be appended with a request for leave to file such motion").[5] We also are mindful that pursuant to General Statutes § 46b-56 (i), the discretion afforded the trial court in fashioning custody orders includes the ability to "order either parent or both of the parents . . . to participate in counseling . . . provided such participation is in the best interests of the child." See also *DiGiovanna* v. *St. George*, 300 Conn. 59, 74, 12 A.3d 900 (2011) (§ 46b-56 [i] authorizes "the court to order the defendant to undergo counseling"); *Foster* v. *Foster*, 84 Conn. App. 311, 323, 853 A.2d 588 (2004) (concluding that court had statutory authority to order plaintiff to undergo postjudgment counseling in custody case). The counseling ordered in the present case plainly was in the best interests of the minor child, and the defendant has not argued otherwise.

"An appellant who seeks to reverse the trial court's exercise of judicial discretion assumes a heavy burden."

---

[5] The guardian ad litem testified both that the facts of this case warranted the imposition of an order pursuant to *Strobel* and that such an order "would be best" for the minor child.

(Internal quotation marks omitted.) *Gina M. G.* v. *William C.*, 77 Conn. App. 582, 588, 823 A.2d 1274 (2003). In light of the foregoing and the troubling facts of this case, we conclude that the defendant has not established that the court abused its discretion in placing conditions on the defendant's ability to seek modification of its custody and parenting access orders.

### IV

The defendant also argues that the court abused its discretion in predicating its decision in part on parental alienation syndrome.[6] Her claim is belied by the fact that the plaintiff presented no expert testimony, and the court made no findings, regarding that theory. Rather, the plaintiff presented an abundance of evidence pertaining to specific acts of coercion and manipulation on the part of the defendant that the court, as the finder of fact, credited. Such considerations are expressly authorized under Connecticut law. Section 46b-56 (c) provides in relevant part that "[i]n making or modifying any order . . . the court shall consider the best interests of the child, and in doing so may consider . . . (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute . . . ." Accordingly, the defendant's claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] As one court noted, "parental alienation syndrome is a systematic programmed alienation of a child from one parent brought upon by the other parent." *Ellis* v. *Ellis*, 952 So. 2d 982, 992 (Miss. App. 2006); see also *A.C.H.* v. *F.R.S.*, 247 S.W.3d 921, 926 n.4 (Mo. App. 2008) (parental alienation syndrome is where parent attempts to emotionally alienate child from absent parent). Like other jurisdictions, Connecticut has not passed on the issue of whether parental alienation syndrome is a reliable theory. See, e.g., *In re Marriage of Rosenfeld*, 524 N.W.2d 212, 215 (Iowa App. 1994).