# LORI J. HIBBARD *v.* TONY E. HIBBARD
## (AC 33652)

Alvord, Espinosa and Sullivan, Js.

Argued September 11—officially released October 30, 2012

*Erin C. O'Leary*, with whom, on the brief, was *Michael A. Blanchard*, for the appellant (plaintiff).

*Christopher D. Grotz*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Lori J. Hibbard,[1] appeals from the judgment of the trial court granting the postdissolution motions of the defendant, Tony E. Hibbard, to modify the court's custody order and to find the plaintiff in contempt. On appeal, the plaintiff claims that the court (1) improperly admitted the report of a family relations counselor, (2) abused its discretion by finding her in contempt of the court's visitation orders and (3) abused its discretion in granting sole custody of the minor child to the defendant. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the plaintiff's appeal. The parties were married on October 11, 2003, and have one minor child who was born August 4, 2005. On September 12, 2007, the court dissolved the parties' marriage and incorporated into its judgment the provisions of a marital settlement agreement. The agreement provided, inter alia, that the parties would share joint legal custody of their daughter, whose primary residence

---

[1] The plaintiff is now known as Lori J. Bielecki.

would be with the plaintiff. The parties further stipulated that the defendant would be entitled to two scheduled visits per week "or such other times as the parties may agree."

Commencing in July, 2008, both parties began filing postjudgment motions. The plaintiff alleged that the defendant failed to comply with the court's financial orders, and the defendant alleged that the plaintiff failed to comply with the court's visitation orders. Since the date of the dissolution, the parties have filed approximately thirty postjudgment motions. Initially, most of the disputes were resolved by agreement. As time passed, however, the parties became increasingly contentious over the issue of the defendant's parenting time with their daughter.[2] The visitation schedule has been modified several times. The defendant's access to their daughter was restricted to supervised visits, later expanded to permit overnight visits on alternating weekends, and then again modified to eliminate the overnight visits. Additionally, the court entered an order regarding the visitation schedule on holidays and birthdays when the parties were unable to reach a consensus.

There are four motions at issue in this appeal. On May 26, 2011, the defendant filed a motion to find the plaintiff in contempt for her failure to deliver their daughter for scheduled parenting time on May 18, 19, 21 and 22, 2011.[3] On May 31, 2011, the defendant filed

[2] The court appointed a guardian ad litem for the minor child on August 5, 2009.

[3] The defendant filed a motion for contempt on May 23, 2011, which was essentially identical to the motion filed on May 26, 2011. The May 23, 2011 motion subsequently was withdrawn.

The May 26, 2011 motion alleged that, in addition to the four days in May, 2011, the plaintiff further failed to deliver the minor child for scheduled visitation on thirty previous occasions. During the hearing on the motion, however, the parties indicated that only the four days in May were at issue before the court. Accordingly, the court addressed only those four days in its memorandum of decision.

a motion to modify the custody order to award him sole custody of the minor child and to accord supervised visitation to the plaintiff. In his motion for modification, he alleged that the circumstances of the case had changed substantially in that "[t]he plaintiff continues parental alienation of the minor child with the defendant." The plaintiff filed two motions on June 1, 2011, requesting that the court modify the judgment to suspend the child's unsupervised visitation with the defendant.[4] The orders in effect at the time the parties' four motions were filed provided for joint custody of the minor child, primary residence with the plaintiff, and visitation with the defendant on Wednesday afternoons, alternating Saturdays and Sundays from 12 to 7 p.m., and designated holidays and birthdays.

The court held a hearing on the parties' motions on June 9, 15 and 24, 2011. On June 27, 2011, the court issued its memorandum of decision. The court first stated that it had reviewed all of the pleadings and orders in the file and that it had considered applicable case law and statutes, particularly General Statutes §§ 46b-56 (c) and 46b-87. The court further noted that it had observed the demeanor and attitude of the witnesses and had assessed their credibility. The court then proceeded to make its findings and conclusions. The court found that the plaintiff had failed to establish any justification for her unilateral suspension of visits between their child and the defendant scheduled for May 18, 19, 21 and 22, 2011, and, accordingly, it found her in contempt of the court's visitation orders.

Further, the court determined that "the enduring and passionate battle between the parents renders the original joint custody arrangement no longer workable and hence not in the child's best interest . . . ." The court

---

[4] The court considered the second motion to be an exact copy of the first motion and, therefore, "redundant."

referred to the plaintiff's "strategy of pursuing the elimination of [the] defendant from their daughter's life" and concluded that leaving the child with the plaintiff would result in "the eventual loss to the child of her father." The court concluded by granting the defendant's motion to modify the custody order and awarded sole custody of the minor child to the defendant.[5] Additionally, the court entered orders allowing the plaintiff to have unsupervised visitation with their daughter.

I

The plaintiff's first claim is that the court improperly admitted into evidence the comprehensive evaluation report prepared by Matthew Walker, a family relations counselor. She argues that the report contained numerous prejudicial hearsay statements that should have been redacted prior to its consideration by the court. The following additional facts and procedural history are necessary for the resolution of this claim.

On November 29, 2010, the court, *Shluger, J.*, referred this matter to the family relations division for a comprehensive evaluation report. Walker completed the report on June 8, 2011. The next day, which was the first day of the scheduled hearing on the parties' outstanding motions, the plaintiff's attorney stated on the record that he had just received the report and that he had contemplated requesting a continuance of the hearing. He represented, however, that he had conferred with his client and that the plaintiff was comfortable in proceeding with the hearing at that time.

When Walker subsequently was called by the defendant as a witness, the defendant's attorney offered the report as a full exhibit. The court inquired if the plaintiff objected to its admission. The plaintiff's attorney

---

[5] A fortiori, the court denied the plaintiff's motions to modify the judgment to suspend unsupervised visitation with the defendant.

responded: "I would object. There's numerous hearsay statements contained in the document." The court overruled the objection: "That's fairly customary in a family relations [counselor's] report. So I'm going to overrule the objection. . . . You will, of course, have occasion to cross-examine Mr. Walker." On appeal, the plaintiff argues that the admission of the report with the unredacted hearsay statements of various individuals was prejudicial because "the court expressly relied on several of the hearsay statements in its June 27, 2011 memorandum of decision."

In support of her position, the plaintiff cites *Stewart* v. *Stewart*, 177 Conn. 401, 418 A.2d 62 (1979). In *Stewart*, the plaintiff claimed that the trial court improperly admitted a family relations report that contained inadmissible hearsay statements. Id., 404–405. Our Supreme Court affirmed the challenged ruling because the plaintiff had persisted in objecting to the entire report instead of specifying the inadmissible portions and giving reasons why those portions were inadmissible. Id., 405. The plaintiff in the present case argues that the court "summarily overruled" the plaintiff's objection to the admission of the report without having "invited" counsel to make objections to any specific portions containing inadmissible evidence.

*Stewart* is inapposite to the present case. In a footnote, the court in *Stewart* stated that a recent amendment to the rules of practice; Practice Book (1978) § 479; permitted the admission of case study reports if the author was available for cross-examination, but that the amendment had not been in effect at the time the case was heard. *Stewart* v. *Stewart*, supra, 177 Conn. 405 n.1. Section 479 is now Practice Book § 25-60, titled "Evaluations and Studies." Subsection (c) of Practice Book § 25-60 provides: "Any report prepared pursuant

to Section 25-61 shall be admissible in evidence provided the author of the report is available for cross-examination." Practice Book § 25-61 provides: "The family services unit shall, at the request of the judicial authority, provide assistance with regard to issues concerning custody, visitation, finances, mediation, case management and such other matters as the judicial authority may direct."

The trial court in the present case requested a comprehensive evaluation report from the family services division. As such, the report was admissible pursuant to Practice Book § 25-60 provided that the family relations counselor who authored it was available for cross-examination. Walker was called as a witness and was available for cross-examination,[6] as the court indicated when it overruled the plaintiff's objection to the admission of the report on hearsay grounds. Accordingly, the court properly admitted the report and the plaintiff's first claim has no merit.

## II

The plaintiff's next claim is that the court abused its discretion by finding her in contempt because it should have concluded that her noncompliance with the court's visitation orders was justified under the circumstances. The court found that the plaintiff failed to deliver their daughter for parenting time with the defendant on May 18, 19, 21 and 22, 2011, which were court-ordered visitation dates. The plaintiff testified at the hearing that her refusal to comply was justified by a reasonable fear for the safety of their daughter. The court concluded that she failed to establish any justification for her unilateral suspension of those visits and found her in contempt of the prior court orders.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court

---

[6] The plaintiff's attorney did cross-examine Walker at the hearing.

abused its discretion in failing to find that the actions or inactions of the [plaintiff] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Gina M. G.* v. *William C.*, 77 Conn. App. 582, 590, 823 A.2d 1274 (2003). "[A] court may not find a person in contempt without considering the circumstances surrounding the violation to determine whether such violation was wilful." (Internal quotation marks omitted.) Id., 592. "[A] contempt finding is not automatic and depends on the facts and circumstances underlying it. . . . It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Citation omitted; internal quotation marks omitted.) *Meehan* v. *Meehan*, 40 Conn. App. 107, 110, 669 A.2d 616, cert. denied, 236 Conn. 915, 673 A.2d 1142 (1996).

With these principles in mind, we turn to the trial court's decision in the present case. Following the hearing on the parties' motions, the court issued a comprehensive twenty page memorandum of decision in which it set forth the history of the case, the prior modifications of visitation orders, the evidence submitted by the parties with respect to the pending motions and the court's factual findings and conclusions. At the outset, the court noted that it was familiar with the parties and their prior disputes because it had entered the last two orders in the file that addressed visitation with the minor child. The court also expressly stated, as we previously have discussed, that it had observed the demeanor and attitude of all of the witnesses and had assessed their credibility.

At the hearing, the plaintiff did not deny that she failed to deliver their minor child for visitation with the defendant on May 18, 19, 21 and 22, 2011, and that the

orders in effect at that time entitled the defendant to parenting time with their daughter on those days. Instead, the plaintiff claimed that she refused to permit the visitation because their daughter, on or about May 6, 2011, had informed her that a man at the defendant's home inappropriately touched her during the previous Wednesday visit with the defendant. The plaintiff testified that she was afraid that their daughter's "safety was being compromised" and that she had telephoned her therapist to discuss the matter. The plaintiff's therapist, being a mandated reporter pursuant to General Statutes § 17a-101a et seq., reported the alleged abuse to the department of children and families (department). After an investigation, the department concluded that the allegation was unsubstantiated.

The court found that the plaintiff's stated concern did not justify her unilateral suspension of their daughter's visits with the defendant. The court gave the following reasons for that determination: (1) the plaintiff had made prior allegations, which were unsubstantiated, claiming that the defendant slapped their daughter in the face and placed her in physical danger; (2) the plaintiff previously sought and was granted restrictions on visitation when she claimed another friend of the defendant upset the child by taking pictures of her during one of the scheduled visits; (3) the plaintiff's repeated allegations that the child was afraid of the defendant and refused to visit with him were contradicted by the child's therapist, the investigative social worker from the department, a worker at the child's day care facility, Walker, and the credible testimony of the defendant;[7] (4) the plaintiff had not been candid and truthful in her reporting on the defendant and his relationship with their daughter as evidenced by, inter

[7] The court concluded that "[the plaintiff's] premise that the child is afraid of [the defendant] and does not desire contact with him is baseless."

alia, the plaintiff's erroneous statement to the department's social worker that the defendant had been arrested for child abuse in New Hampshire and her unsubstantiated allegations about other male friends of the defendant that resulted in referrals to and investigations by the department; and (5) the social worker's testimony that the child told her that the plaintiff had prompted their daughter to say that she had been touched by the defendant's friend.[8] All of the court's findings are supported by the evidence in the record.

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Gina M. G.* v. *William C.*, supra, 77 Conn. App. 592. On the basis of the evidence presented at the hearing, and the court's assessment of the credibility of the parties, the court found that the plaintiff's expressed fear did not justify her wilful noncompliance with the court's visitation orders. "It is axiomatic that a person may not pick and choose which court orders he will obey. . . . A party's opinion concerning the necessity for a particular order does not excuse his disobedience. . . . There is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid . . . [or] should not be obeyed." (Citation omitted; internal quotation marks omitted.) Id. For these reasons, we conclude that the court did not abuse its discretion by holding the plaintiff in contempt of the visitation orders.

[8] The plaintiff takes issue with the court's statement that it found her account of the alleged touching to be doubtful because she failed to notify the defendant directly about the incident. According to the court, it would have been logical and appropriate for the plaintiff to telephone the defendant about the alleged touching so that he could take immediate measures to protect their daughter. The plaintiff claims that this finding is clearly erroneous because it was undisputed that she did contact the defendant by way of a text message. This one inaccuracy does not undermine our confidence in the court's fact-finding process and we are not persuaded that it was

III

The plaintiff's final claim is that the court abused its discretion by modifying the custody order and awarding sole custody of the minor child to the defendant. Specifically, she argues that the court improperly modified the order without finding a substantial change in circumstances and that it erroneously determined that the modification was in the best interests of the child. We disagree.

Section 46b-56 (a) provides the court with authority to make or modify any proper order regarding the custody, care, education, visitation and support of minor children in dissolution actions. Section 46b-56 (b) provides in relevant part that in making or modifying any such order, "the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. . . ." In considering the best interests of the child, the court may consider one or more of the factors set forth in § 46b-56 (c). Those factors include, inter alia, "the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders"; General Statutes § 46b-56 (c) (6); and "any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute . . . ." General Statutes § 46b-56 (c) (7). That statute also provides that "[t]he court is not required to assign any weight to any of the factors that it considers." General Statutes § 46b-56 (c).

harmful. See *Lambert* v. *Donahue*, 78 Conn. App. 493, 508–509, 827 A.2d 729 (2003).

"Before a court may modify a custody order, it must find that there has been a material change in circumstance since the prior order of the court, but the ultimate test is the best interests of the child. . . . The sole question is whether the trial court abused its discretion in deciding that the best interests of the child would be served by [the modification]." (Internal quotation marks omitted.) *Gillespie* v. *Jenkins*, 127 Conn. App. 228, 232, 14 A.3d 1019 (2011). In other words, "[a]lthough a court also must find that there has been a material change in circumstance since the prior order of the court . . . the ultimate test is the best interests of the child." (Internal quotation marks omitted.) *Eisenlohr* v. *Eisenlohr*, 135 Conn. App. 337, 344–45, 43 A.3d 694 (2012).

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . [W]hether the best interests of the [child] dictate[s] a change . . . is left to the broad discretion of the trial court. . . . A mere difference of opinion or judgment cannot justify the intervention of this court. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . . When the factual basis of the trial court's decision is challenged on appeal, the role of this court is to determine whether the facts set out in . . . the decision . . . are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction

that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Gillespie* v. *Jenkins,* supra, 127 Conn. App. 232–33.

We apply these principles to the present case in our review of the trial court's findings and conclusions with respect to its modification of the custody order that resulted in an award of sole custody of the minor child to the defendant. We begin with the plaintiff's claim that the court modified custody without making a finding of a substantial change in circumstances. She argues that the court considered only the best interests of the child in reaching its determination and failed to make the requisite finding that there had been a material change in circumstances since the prior custody order. See *Kelly* v. *Kelly,* 54 Conn. App. 50, 56, 732 A.2d 808 (1999).

In the court's June 27, 2011 memorandum of decision, it found that "the enduring and passionate battle between the parents renders the original joint custody arrangement no longer workable . . . ." This determination was made following the court's summary of the history of the case, its statement that it had reviewed all of the pleadings and orders in the file, and its factual findings regarding the plaintiff's efforts to thwart the defendant's visitation with their daughter in connection with the motion for contempt. The joint custody order as agreed to at the time of dissolution was premised on the assumption that the defendant would enjoy certain visitation rights with their daughter. Unfortunately, as time passed, disputes over visitation became more frequent and more contentious, as evidenced by the numerous postjudgment motions for contempt and modification filed by the parties in this case.

Although the court did not expressly state that changed circumstances warranted the modification of the custody order, it did expressly state that the original joint custody order was unworkable. The court also

expressly stated that it made its determinations pursuant to the standard enunciated in § 46b-56 (c). The decision referenced evidence that demonstrated the parties' inability to communicate or to reach agreement with respect to issues involving their daughter. For example, the court noted that the plaintiff terminated their daughter's therapy without consulting the defendant when the child's therapist proposed including the defendant in that therapy. Further, the court commented that the plaintiff unilaterally terminated their daughter's four year relationship with her day care provider because a day care worker had communicated information about the child to the child's stepmother, the defendant's current wife.

We conclude that the plaintiff's claim fails for the reasons set forth in *Lambert* v. *Donahue*, 78 Conn. App. 493, 827 A.2d 729 (2003). In *Lambert,* the plaintiff claimed that the court improperly modified custody without making a finding of changed circumstances. This court held: "Upon our review of the court's memorandum of decision, however, we find that the court specifically stated that its orders were made in consideration of the evidence . . . [and] § 46b-56 concerning custody . . . . Furthermore, the memorandum of decision is replete with references to evidence that demonstrates a change in circumstances by the parties' complete inability to communicate concerning their child. . . . Finding that a coparenting situation was not working for these parties, the court properly awarded sole custody to the parent that it found, on the basis of the evidence, best suited to assume that very important responsibility." (Internal quotation marks omitted.) Id., 506; see also *Payton* v. *Payton,* 103 Conn. App. 825, 835, 930 A.2d 802, cert. denied, 284 Conn. 934, 935 A.2d 151 (2007).

The plaintiff next argues that the court improperly found that awarding sole custody to the defendant was

in the best interests of the child. In her brief, the plaintiff stresses that the child had lived with her since birth and that the court acknowledged that she had met their daughter's "material and intellectual needs." The plaintiff also references testimony of the child's guardian ad litem that a transfer of custody would result in a period of "serious readjustment" for the child.

The court was not unmindful of these considerations. In its memorandum of decision, the court stated: "Because the child has lived with [the] plaintiff since birth, the court does not take lightly the prospect of changing her primary residence at this point." Nevertheless, the court determined that such a modification to the custody order was in the best interests of the child because "[c]learly, in light of the above discussion regarding contempt, [the] plaintiff demonstrates a real deficiency in her 'willingness and ability . . . to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders,' to quote § 46b-56 (c)." The court referenced the plaintiff's "strategy of pursuing the elimination of [the] defendant from their daughter's life" and concluded that the result of leaving the child with the plaintiff would be "the eventual loss to the child of her father."

As a consequence of this situation, the court noted that the minor child was beginning to evidence a pattern of expressing complaints of pain, which led to an unusual number of visits to her physician's office or a hospital emergency room. The child also manifested signs of distress and guilt when preparing for visitations: "[S]he indicated that she will sometimes say that she does not wish to visit her father, as that makes her mother happy." The court expressed the concern, as was voiced by the child's therapist, that the plaintiff had a propensity to remove their daughter from a setting

in which a neutral observer might conclude that the defendant was not as bad a parent as she portrayed him to be. As examples, the court referred to the plaintiff abruptly terminating both their daughter's therapy sessions and the four year arrangement with the child's day care provider.

There is support in our case law for transferring custody of a minor child when the custodial parent has engaged in conduct designed to alienate the child from the noncustodial parent. In *Eisenlohr* v. *Eisenlohr*, supra, 135 Conn. App. 340, 345, this court held that the trial court did not abuse its discretion in modifying the custody award to transfer sole physical custody of the minor child from the defendant mother to the plaintiff father. The trial court made its ruling after finding that the defendant was not truthful and had caused the initiation of baseless department investigations. Id., 341. Further, "the plaintiff presented an abundance of evidence pertaining to specific acts of coercion and manipulation on the part of the defendant that the court, as the finder of fact, credited." Id., 348. We concluded that such considerations were expressly authorized by § 46b-56 (c) (7). Id.

As this court repeatedly has emphasized, we defer to the trial court's assessment of the credibility of the witnesses and the weight to afford their testimony. See *Malave* v. *Ortiz*, 114 Conn. App. 414, 425, 970 A.2d 743 (2009). The record supports the court's findings that the plaintiff's activities were designed to alienate their daughter from her father and that they were having an adverse impact on the child. The court's concern was clearly apparent: it feared that the child eventually would be left with a relationship with one, but not both, of her parents.[9] As poignantly stated by the court, "[the

[9] The defendant testified that if he was awarded physical custody of their daughter, he faithfully would deliver their child for visitation or allow the plaintiff to pick up the child for visitation in accordance with any visitation schedule ordered by the court.

plaintiff] is unapologetic for the lengthy interruptions in the [defendant's] visits with the child, or for the cost and humiliation which her several claims have caused him. She gives this court little confidence that a continuation of the status quo would not simply produce more of the same: continued conflict over visitation, and over every detail of [the defendant's] relationship with his child; continued litigation; and continued pain for the child, until something changes or [the] defendant gives up." Under these circumstances, we cannot conclude that the court erroneously found that a modification of the custody order would be in the best interests of the minor child or that it abused its discretion by transferring sole custody of the minor child to the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.