ELIZABETH MUNRO *v.* SERGIO MUNOZ
(AC 35115)

Beach, Alvord and Bear, Js.

Argued September 24—officially released December 3, 2013

*Elizabeth Lovering*, self-represented, the appellant (plaintiff).

*Anthony M. Solomine*, with whom was *Alison Slater Broad*, for the appellee (defendant).

*Martha Anne Wieler*, for the guardian ad litem for the minor children.

*Opinion*

ALVORD, J. The plaintiff, Elizabeth Munro, appeals from the judgment of the trial court denying her motion for counsel fees and other costs incurred as the result of the emergency ex parte motion for sole legal and physical custody of the parties' minor children filed by her former husband, the defendant, Sergio Munoz. On appeal, the plaintiff's claims can be stated as follows: (1) the trial court abused its discretion by sustaining the defendant's objection to the admission of nonfinancial evidence, thereby preventing the plaintiff from introducing any evidence to meet her burden of proof as to her claim that the defendant's emergency ex parte change of custody motion was filed in bad faith; and (2) the trial court's finding that the emergency ex parte change of custody motion was filed in good faith was clearly erroneous. We agree and therefore reverse the judgment and remand the case to the trial court for a new hearing on the plaintiff's motion for counsel fees and other costs.

The record reveals the following facts and procedural history. The plaintiff and the defendant were married in California in 1994. Two children were born of the marriage, in 1996 and in 2001. Thereafter, the family moved to Connecticut. The plaintiff filed her dissolution complaint on August 8, 2003, and, following a contested

hearing, the court rendered judgment dissolving the marriage on April 8, 2005. The court issued a wide range of orders in connection with the dissolution judgment, including granting the parties joint legal custody of the children, awarding the plaintiff physical custody and the defendant "reasonable and liberal parenting time." The parties' dissolution judgment was modified in July, 2005, to allow the children to temporarily relocate to Paris, France, with the plaintiff, and again in August, 2007, to permit the children to relocate to Houston, Texas, with the plaintiff.

On July 26, 2011, several weeks into the children's Connecticut summer vacation time with the defendant and less than two weeks before their scheduled return to Texas for the start of the school year, the defendant filed an emergency ex parte motion seeking sole legal and physical custody of the children. The emergency ex parte motion included a request that the plaintiff have no contact with the children.[1] The court, *Abery-Wetstone, J.*, granted the defendant's motion in part, but modified its suggested orders such that (1) the emergency change of custody was granted pending "further order of the court," and (2) supervised telephonic and physical contact between the plaintiff and the children was ordered by the court.

The plaintiff immediately travelled from Texas to Connecticut with her newborn son[2] and, on August 10,

[1] The emergency ex parte motion included various allegations of misconduct, ranging from food deprivation to physical abuse. The defendant asserted that the misconduct had occurred "[o]ver the last few years" but had "escalated in the past year." The defendant stated that he previously had "tried to report these incidents to [the] Connecticut [Department of Children and Families] and [the] Texas [C]hild [P]rotective [S]ervices," but that he was "without success."

[2] In her affidavit, the plaintiff asserts that her son was born on July 3, 2011, the day after the parties' children arrived in Connecticut, and that she was required to travel by car because the infant was too young to be permitted to fly.

2011, she filed a responsive emergency ex parte motion[3] seeking the appointment of a guardian ad litem for the children and the provision of a visitation schedule and a third party supervisor. The court, *Abery-Wetstone, J.*, granted the plaintiff's motion on the same day it was filed and appointed a guardian ad litem for the children.[4] The court also ordered an access schedule between the plaintiff and the children, to be supervised by either of the two professional supervisors suggested by the plaintiff. The parties entered into an agreement on August 17, 2011, which vacated the July 26, 2011 emergency ex parte order for sole legal and physical custody, and reinstated the earlier long-standing order that the parties have joint legal custody of the children, with primary residence and final decision making authority resting with the plaintiff. Additional provisions were added to the agreement, including that the guardian ad litem monitor the case for one year, and that both parties, as well as the children, engage in individual counseling with a therapist selected by the guardian ad litem.

On July 10, 2012, the plaintiff refiled a motion for "counsel fees, costs, and the visitation supervisor fees, as the defendant filed for relief on July 26, 2011, ex parte, and obtained an order for sole legal and physical custody of the minor children on an emergency basis."[5]

---

[3] In her responsive emergency ex parte motion, the plaintiff stated that the defendant first informed her on August 3, 2011, four days before the children were scheduled to return to Texas, that he had filed " 'some motions,' " without any further explanation. The plaintiff asserted that the defendant's claims were without merit, and it was "imperative to the best interest[s] of the children" that the matter be resolved quickly.

[4] The guardian ad litem filed a statement in the present case "adopt[ing] the legal arguments set forth in the [plaintiff's] brief . . . ." The guardian ad litem and his attorney also appeared at oral argument before this court and reaffirmed that the guardian ad litem adopted the plaintiff's position.

[5] The plaintiff brought the July 10, 2012 motion and this appeal of the court's denial of the motion as a self-represented party. During the proceedings resulting from the defendant's emergency ex parte motion for sole legal and physical custody, the plaintiff was represented by counsel. Her attorney filed an earlier motion with an itemized fee affidavit for counsel fees and costs on her behalf on August 16, 2011. The plaintiff represented to the trial

She requested that the court "find the allegations made by the defendant as to the plaintiff's parenting are without merit; were not an emergency; were designed only to harass, annoy, and embarrass the plaintiff and to put her to tremendous financial expense." A two day hearing was held on the motion on September 25 and 28, 2012, before the court, *Gould, J.*, which denied the motion, ruling from the bench at the conclusion of the hearing on September 28, 2012, and following up with a written order issued that day.

In its order denying the plaintiff's motion for counsel fees, costs, and the visitation supervisor fees, the trial court took "judicial notice of all motions and decisions filed on or about July 26, 2011." The court found that "the fees and costs testified to were reasonable," and that "based upon a preponderance of evidence . . . the defendant filed motions in good faith." The court further found that "the defendant did not file motions to harass or annoy the plaintiff." The court made "no finding of abuse of process by the defendant." This appeal followed.

I

We first address the plaintiff's claim that the trial court abused its discretion by sustaining the defendant's objection to the admission of nonfinancial evidence, thereby preventing the plaintiff from introducing any evidence to meet her burden of proof as to her claim that the defendant's emergency ex parte motion was filed in bad faith. We agree.

"[T]he common law rule in Connecticut, also known as the American Rule, is that attorney's fees and ordinary expenses and burdens of litigation are not allowed

court that when the August 17, 2011 agreement was signed, it was specifically understood that she would "lay the [August 16 motion for counsel fees] down for another day" because there was not enough time to address the issue before the plaintiff returned to Texas with the children.

to the successful party absent a contractual or statutory exception." (Internal quotation marks omitted.) *Berzins* v. *Berzins*, 306 Conn. 651, 661, 51 A.3d 941 (2012). "Th[is] rule does not apply, however, where the opposing party has acted in bad faith. . . . It is generally accepted that the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. . . . This bad faith exception applies, not only to the filing of an action, but also in the conduct of the litigation. . . . Moreover, the trial court must make a specific finding as to whether counsel's [or a party's] conduct . . . constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers to impose attorney's fees for engaging in bad faith litigation practices." (Citations omitted; internal quotation marks omitted.) *Maris* v. *McGrath*, 269 Conn. 834, 844–45, 850 A.2d 133 (2004).

The abuse of discretion standard of review applies when reviewing a trial court's decision to deny an award of attorney's fees. See *Broadnax* v. *New Haven*, 270 Conn. 133, 178, 851 A.2d 1113 (2004). "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *LaBossiere* v. *Jones*, 117 Conn. App. 211, 221, 979 A.2d 522 (2009). "[Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Milford Bank* v. *Phoenix Contracting Group, Inc.*, 143 Conn. App. 519, 532–33, 72 A.3d 55 (2013).

The following additional facts are relevant to our resolution of this claim. During the plaintiff's examination of her first witness, one of the two visitation supervisors appointed by the court on August 10, 2011, the

defendant's counsel objected to the plaintiff's question "[a]nd how many cases have [you] worked with" by stating, "I think that we're just having this woman testify as to her bills. I thought that's what it was. I don't think we're retrying the issues here." Following a colloquy between the court and the plaintiff,[6] the defendant reiterated his objection by stating, "I think that if there was an issue that it should have been raised, they should have raised that issue at the time of appointing her or shortly thereafter." The court then ruled: "All right, looking back at the motion that is in front of us today . . . [it] is a motion for counsel fees and costs. The claim being made by the plaintiff is that she's entitled to reimbursement for counsel fees, costs, and visitor supervision fees as a result of an order obtained on or about July 26, 2011, ex parte on behalf of the defendant. The motion goes on to state that the allegations of the plaintiff's parenting were without merit, were not an emergency, designed to harass, annoy, and embarrass the plaintiff and put her to tremendous financial expense. The court reads the motion as a request for either payment and or reimbursement of counsel fees or costs. Therefore, I will limit this witness' testimony to the amount of the bills that are being claimed. The objection is sustained in part." The plaintiff persisted

---

[6] This exchange occurred as follows:

"[The Plaintiff]: That's what?

"The Court: Is that what we've got, ma'am?

"[The Plaintiff]: I didn't hear the—

"The Court: The objection was if this witness is called to testify as to her bills?

"[The Plaintiff]: No, she's not just called to testify about the bills, not at all.

"The Court: All right, the claim that is being made here is for attorney's fees and for various bills, as I recall.

"[The Plaintiff]: Yes.

"The Court: What other purpose is she being called for?

"[The Plaintiff]: Just to validate that there should have never been any concerns with interaction with the children. That the supervision was unnecessary."

in seeking to introduce evidence regarding the legitimacy of the defendant's claim and the issue of bad faith through another witness, but the court reiterated its ruling that there were no issues before the tribunal beyond the dollar amount of the bills.[7]

"To ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . and a high degree of specificity in the factual findings of [the] lower courts." (Internal quotation marks omitted.) *Maris* v. *McGrath*, supra, 269 Conn. 845. Accordingly, when determining whether the bad faith exception applies, "the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or its wilful violations of court orders; [t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation." (Internal quotation marks

---

[7] The court's response to the plaintiff calling the guardian ad litem as a witness was as follows:

"The Court: All right, you'll be offering [the guardian ad litem] in terms of other fees and expenses?

"[The Plaintiff]: Fees and expenses and the legitimacy of the claim.

"The Court: All right, we're not—that's already been ruled upon. I'll rule, again, if and when he's on the stand on that issue. We're solely dealing with amounts of bills here today. All right, do you anticipate [the guardian ad litem's] testimony to be relatively brief. I'm not holding you to anything, I'm just asking.

"[The Plaintiff]: No.

"The Court: No. All right, what time frame—

"[The Plaintiff]: Well, relatively, but not—

"The Court: Well you're going to ask him about his bills, right?

"[The Plaintiff]: Yes. I mean, I could ask him about his bills now and then if we're going into other issues—

"The Court: Well, as I've already ruled, ma'am, there are not any other issues in front of the court today other than the bills."

omitted.) Id., 845–46. "*Maris* makes clear that in order to impose sanctions pursuant to its inherent authority, the trial court must find *both* that the litigant's claims were entirely without color *and* that the litigant acted in bad faith." (Emphasis in original.) *Berzins* v. *Berzins*, supra, 306 Conn. 663.[8]

We conclude that the trial court in the present case abused its discretion by sustaining the defendant's objection and thus limiting witness testimony to the dollar amount of the bills being claimed. In order to make a determination regarding whether *Maris* applied, the court had to find both that the defendant's claims were entirely without color, and that he acted in bad faith. As a result of its ruling on the defendant's objection, however, the trial court precluded all evidence on this subject. Accordingly, we conclude that the ruling on the defendant's objection constituted an abuse of discretion, and we remand the case to the trial court for a hearing on whether the plaintiff is entitled to counsel fees and other costs under the bad faith exception.[9]

## II

Next, we address the plaintiff's argument that the trial court's finding that the emergency ex parte change of custody motion was filed in good faith was clearly erroneous. We agree with the plaintiff.

We begin with the standard of review. "Whether a party has acted in bad faith is a question of fact, subject

---

[8] "As applied to a party, rather than to his attorney, a claim is colorable for purposes of the bad faith exception to the American rule, if a reasonable person, given his or her [firsthand] knowledge of the underlying matter, could have concluded that the facts supporting the claim might have been established." (Internal quotation marks omitted.) *Maris* v. *McGrath*, supra, 269 Conn. 847.

[9] We note that a litigant seeking an award of attorney's fees for the bad faith conduct of the opposing party faces a high hurdle. *Berzins* v. *Berzins*, supra, 306 Conn. 662. Nevertheless, the plaintiff is entitled to an opportunity to present her argument and evidence.

to review only for clear error." *Renaissance Management Co.* v. *Connecticut Housing Finance Authority,* 281 Conn. 227, 240, 915 A.2d 290 (2007). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Hibbard* v. *Hibbard,* 139 Conn. App. 10, 21–22, 55 A.3d 301 (2012).

As we have previously established, the court limited the witnesses' testimony to the amount of the bills. On its face, the plaintiff's allegation of bad faith in her motion for counsel fees and other costs presented the court with disputed issues of fact concerning the defendant's conduct and intent in filing the emergency ex parte change of custody motion. The court, however, did not allow the plaintiff to present evidence on the issue of bad faith. Instead, the court simply relied on the "motions and the decisions that have been filed by the court as well as the agreements that have been reached by the parties resulting from the filing of these motions" in reaching its decision to deny the plaintiff's motion and in its finding that the defendant "filed motions in good faith."[10] The court's refusal to permit testimony beyond the scope of the amount of bills limited the record in such a way that prevented any evidence of bad faith from being admitted. Accordingly, because the court failed to conduct a hearing on the

[10] We further note that the court improperly terminated the hearing after the plaintiff's evidence, which the court limited to the dollar amount of the bills. At that juncture, the court informed the defendant that "based on the evidence the court has heard in this case, I do not see the necessity for you to call any witnesses." The court clarified that it was "not going to prohibit [the defendant] from doing so, but [it] [did not] see the necessity for [the defendant] to do so." Then the court promptly issued its oral decision, finding "by a preponderance of the evidence that the filing by the defendant . . . was done in good faith."

issue of bad faith, it is impossible to determine whether the defendant had a good faith basis for seeking the emergency ex parte motion. We therefore conclude that it was clearly erroneous for the trial court to find that the defendant filed his emergency ex parte change of custody motion in good faith.

The trial court already has expended significant judicial resources on the determination of the amount of and reasonableness of the counsel fees and other costs in this case, and found that "the fees and costs testified to were reasonable." Neither party has challenged this finding on appeal. Accordingly, we reverse the judgment and remand this case exclusively for a hearing on the issue of whether the plaintiff may recover her counsel fees and costs under the bad faith exception to the American rule.

The judgment denying the plaintiff's motion for counsel fees and costs is reversed and the case is remanded for a new hearing on the plaintiff's motion consistent with this opinion.

In this opinion the other judges concurred.