******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LIUDMIL K. PETROV *v.* NATALIYA GUEORGUIEVA
(AC 37108)

Lavine, Alvord and Sullivan, Js.

*Argued December 3, 2015—officially released August 9, 2016*

(Appeal from Superior Court, judicial district of Fairfield, Klatt, J. [judgment]; Hon. Constance L. Epstein, judge trial referee [motions for contempt, to modify custody].)

*Norman A. Roberts II*, with whom, on the brief, were *Anthony L. Cenatiempo* and *Tara C. Dugo*, for the appellant (defendant).

*Nancy Aldrich*, with whom was *Roy H. Ervin, Jr.*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The defendant, Nataliya Gueorguieva,[1] appeals from the July 29, 2014 judgment of the trial court, granting the December 12, 2012 postjudgment motion of the plaintiff, Liudmil K. Petrov, to modify the primary physical custody of the parties' minor child. On appeal, the defendant claims that the court (1) improperly modified primary physical custody of the child when there was no material change in circumstances since the time of the last modification, (2) improperly modified primary physical custody of the child by failing to base its orders on present circumstances, and (3) abused its discretion by determining that the change in primary physical custody was in the best interests of the child. We disagree and, therefore, affirm the judgment of the trial court.[2]

The following facts and procedural history are relevant to this appeal. The defendant and the plaintiff are the parents of the child. The defendant and the plaintiff, who were never married, lived together in Fairfield when the child was born, but separated one year after her birth. For a period of time following their separation, both parties continued to reside in Fairfield.

On September 15, 2010, the plaintiff filed his initial application, seeking joint legal custody and primary physical custody of the child. The defendant submitted an answer and cross complaint on October 7, 2010, in which she sought, inter alia, joint legal custody, primary physical custody, and a schedule of visitation for the plaintiff. On January 20, 2011, the plaintiff submitted an additional application, in which he again sought joint legal custody and primary physical custody, as well as child support.

As noted by the trial court, "[t]he two inch thick file at the Superior Court reflects numerous back and forth motions for findings of contempt and for other court orders, with pendente lite agreements as to custody and access."[3] On May 8, 2012, the court, *Klatt, J.*, held a hearing on competing motions for modification of custody filed by the plaintiff and the defendant,[4] which the parties agreed would operate as a final hearing on the plaintiff's custody application. In its July 10, 2012 memorandum of decision (2012 decision), the court found that the defendant's move to New York was for a legitimate purpose, the location was reasonable in light of that purpose, and it was in the best interests of the child. Consequently, the court permitted the child to relocate to the defendant's home in New York. The court also adopted the defendant's proposed parental responsibility plan, which was appended to its memorandum of decision. This plan provided, inter alia, that the defendant would have primary physical custody of the child and that the parents were to share legal custody, during which they were to consult one another and

jointly make decisions concerning the child's health, education, and religious upbringing.

On December 12, 2012, the plaintiff filed the motion at issue in this appeal, requesting that the 2012 custodial determination be modified, and a motion requesting that Connecticut maintain jurisdiction over the child's custody. He also filed motions for contempt on November 16, 2012, and December 6, 2013. Prior to the April, 2014 hearing, both parties submitted proposed orders concerning these motions.

The court, *Hon. Constance L. Epstein*, judge trial referee, held a multiday hearing on the plaintiff's motions on April 22, 23, and 24, 2014.[5] On July 29, 2014, the court issued a memorandum of decision (2014 decision). Adjudicating the plaintiff's motions for contempt, the court found the defendant in contempt for her knowing and wilful violations of the court orders, but refrained from ordering sanctions due to its resolution of the plaintiff's motion to modify. With respect to the plaintiff's motion to modify, the court determined that the undisputed fact that the child was about to begin school full-time constituted a material change in circumstances. On the basis of the testimonial and documentary evidence presented over the three days, the court held that it was in the best interests of the child for the plaintiff to have primary physical custody. This appeal followed. Additional facts will be discussed as necessary to our decision.

Before we turn to the substance of the defendant's claims on appeal, we briefly discuss the applicable principles of law governing postjudgment motions to modify custody. "The standard of review in domestic relations cases is well established. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action . . . . Thus, unless the trial court applied the wrong standard of law, its decision is accorded great deference because the trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases . . . . A mere difference of opinion or judgment cannot justify the intervention of this court. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . .

"General Statutes § 46b-56 provides trial courts with the statutory authority to modify an order of custody or visitation. When making that determination, however, a court must satisfy two requirements. First, modification of a custody award must be based upon either a material change [in] circumstances which alters the court's find-

ing of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child.[6] . . . Second, the court shall consider the best interests of the child and in doing so may consider several factors.[7] . . . Before a court may modify a custody order, it must find that there has been a material change in circumstances since the prior order of the court, but the ultimate test is the best interests of the child. . . . These requirements are based on the interest in finality of judgments . . . and the family's need for stability. . . . The burden of proving a change to be in the best interest of the child rests on the party seeking the change." (Citations omitted; emphasis omitted; footnotes altered; internal quotation marks omitted.) *Clougherty* v. *Clougherty*, 162 Conn. App. 857, 867–69, 133 A.3d 886, cert. denied, 320 Conn. 932, 134 A.3d 621 (2016).

I

The defendant asserts that the court improperly modified primary physical custody of the child when no material change in circumstances had occurred since the time of the last modification. The defendant argues that, in making the determination that the child's imminent enrollment in school full-time constituted a material change that justified a modification of the existing custody order, the court erred because: (1) it impermissibly based its decision on a change of circumstances not alleged in the plaintiff's motion to modify custody; (2) it improperly relied on a prospective change of circumstances; and (3) the evidence shows that, under the facts of this case, the child attending school full-time was not a material change in circumstances.

With respect to her first argument, the defendant argues that the plaintiff's motion to modify listed only three grounds, yet the court impermissibly premised its determination on a fourth, unalleged ground. Consequently, the defendant argues, the court's judgment is void. In response, the plaintiff contends both that the court was not limited to the grounds asserted in the motion to modify and, also, that the court, in fact, substantiated the grounds he had raised in his motion.[8]

Our rules of practice state what a party must include in any motion to modify custody. Motions to modify custody are governed by Practice Book § 25-26. Section 25-26 (e) provides: "Each motion for modification shall state the specific factual and legal basis for the claimed modification and shall include the outstanding order and date thereof to which the motion for modification is addressed." We have never had the opportunity to interpret this particular provision in the context of motions to modify custody. Reviewing this requirement in the context of motions to modify support orders, we have held that a court's reliance on a ground not raised in a motion to modify is an abuse of discretion in the

absence of an amendment to the motion. *Prial* v. *Prial*, 67 Conn. App. 7, 12–13, 787 A.2d 50 (2001); see also *Monette* v. *Monette*, 102 Conn. App. 1, 10 n.15, 924 A.2d 894 (2007).

We note that the requirements for what the court may permissibly decide or order on pleadings involving custody matters historically have been much less circumscribed than in other types of actions. For instance, addressing competing petitions to modify a custody arrangement, our Supreme Court stated in *Morrill* v. *Morrill*, 83 Conn. 479, 489, 77 A. 1 (1910), that "[t]he fact that the order made does not conform to the prayer of either the petition or cross-petition furnishes no objection to its validity. It was the court's duty to take such action as in its judgment the situation called for. In the performance of this duty it was unhampered, either in its inquiry or in its decision, by the allegations or prayers of the parents. While they appeared before the court in the outward guise of parties litigant, their position was not that which is ordinarily occupied by parties in actions to determine their rights, and the respondent in urging this objection makes the mistake of attempting to apply the rules of pleading to the proceeding." See also *Simons* v. *Simons*, 172 Conn. 341, 348, 374 A.2d 1040 (1977) ("[t]he court, in determining custody, has a duty to use its judgment, *regardless of the allegations or prayers of the parents*" [emphasis added; internal quotation marks omitted]); *Kidwell* v. *Calderon*, 98 Conn. App. 754, 757–59, 911 A.2d 342 (2006) (court did not abuse discretion or violate mother's due process rights in giving father sole custody, despite his complaint requesting only joint legal custody and any further orders deemed necessary, when, inter alia, sole custody was recommended in both report of family relations officer and testimony of family relations officer and guardian ad litem at hearing); *Fiddelman* v. *Redmon*, 37 Conn. App. 397, 403–404, 656 A.2d 234 (1995) (no limitation requiring courts to adopt only those specific custodial orders sought by parties because "the court has an independent duty to determine an arrangement that meets the best interests of the child").

Even in the context of child custody proceedings, however, the pleadings play an important role in providing notice as to the claims before the court. See *Strohmeyer* v. *Strohmeyer*, 183 Conn. 353, 354–56, 439 A.2d 367 (1981) (reversing decision granting parents joint custody without further hearing where mother sought sole custody, father did not contest request for sole custody in pleadings or at trial, and court suggested at trial that it would give sole custody to mother). In exercising its statutory authority to inquire into the best interests of the child, the court cannot sua sponte decide a matter that has not been put in issue, either by the parties or by the court itself. Rather, it "must . . . exercise that authority in a manner consistent with

the due process requirements of fair notice and reasonable opportunity to be heard. Without a hearing, a trial court may not adjudicate a question of such vital importance to the parties, and one so inherently fact-bound in its resolution. Before a parent is permanently deprived of legal custody, or any change is made therein, the usual and ordinary procedures of a proper and orderly hearing must be observed." Id., 356.

Finally, on prior occasions, this court has relied upon certain principles governing pleadings to address post-judgment motions in contexts similar to this case. See *Gosselin* v. *Gosselin*, 110 Conn. App. 142, 147–48, 955 A.2d 60 (2008) (motion to modify alimony); *Breiter* v. *Breiter*, 80 Conn. App. 332, 335–36, 835 A.2d 111 (2003) (motion for modification or clarification of separation agreement); *Lundborg* v. *Lundborg*, 15 Conn. App. 156, 159–60, 543 A.2d 783 (motion to modify child support), cert. denied, 209 Conn. 818, 551 A.2d 756 (1988). Therefore, a brief review of these principles will be helpful.

"[P]leadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them. . . . The purpose of a complaint or counterclaim is to limit the issues at trial, and such pleadings are calculated to prevent surprise. . . . It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found but not averred cannot be made the basis for a recovery. . . . Thus, it is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings. . . . A judgment in the absence of written pleadings defining the issues would not merely be erroneous, it would be void." (Citation omitted; internal quotation marks omitted.) *Breiter* v. *Breiter*, supra, 80 Conn. App. 335–36; see also *Westfall* v. *Westfall*, 46 Conn. App. 182, 185, 698 A.2d 927 (1997) ("[a] judgment cannot be founded on a finding of facts not in issue, although they may have been shown in evidence to which no proper objection was taken" [internal quotation marks omitted]).

"The complaint is required only to fairly put the defendant on notice of the claims against him. . . . [T]he interpretation of pleadings is always a question of law for the court. . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and

the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Internal quotation marks omitted.) *Data-Flow Technologies, LLC* v. *Harte Nissan, Inc.*, 111 Conn. App. 118, 132, 958 A.2d 195 (2008).

"[I]n the context of a postjudgment appeal, if a review of the record demonstrates that an unpleaded cause of action actually was litigated at trial without objection such that the opposing party cannot claim surprise or prejudice, the judgment will not be disturbed on the basis of a pleading irregularity." *Landry* v. *Spitz*, 102 Conn. App. 34, 43–44, 925 A.2d 334 (2007). In making this determination, our courts look not only to what occurred during the hearing itself; see *Gosselin* v. *Gosselin*, supra, 110 Conn. App. 147 (both parties introduced evidence concerning changes to income and assets); *Mullin* v. *Mullin*, 28 Conn. App. 632, 635–36, 612 A.2d 796 (1992) (both sides argued unpleaded basis for modifying child support without objection and neither addressed ground actually raised in motion); but also to whether actions occurring prior to the hearing placed the party on notice as to the unpleaded issues or facts. See *Stamford* v. *Ten Rugby Street, LLC*, 164 Conn. App. 49, 78–79,    A.3d    (sufficient notice for injunction when, inter alia, defendant received cease and desist order and was separately instructed by zoning enforcement officer that officer believed regulations barred "all crushing, not simply rock crushing"), cert. denied, 321 Conn. 923,    A.3d    (2016); see also *Gosselin* v. *Gosselin*, supra, 147 (issue related to value of parties' assets raised during depositions before hearing on motion to modify).

Additional facts are necessary to our resolution of the parties' arguments. In his motion to modify, the plaintiff asserted that there were three material changes that justified modifying custody; these changes were that "the defendant pulled the child out of preschool, changed the child's medical insurance and filed motions in New York." No other ground is listed, and the plaintiff never sought to amend his motion.

In the 2014 decision, the court found that, during the past year, the defendant had enrolled the child in a morning enrichment program and an afternoon kindergarten. Although the court also made findings of fact related to at least two of the grounds raised in the plaintiff's motion to modify,[9] the court explicitly found only one material change in circumstances: "There is certainly a substantial change in circumstances in that the child is now entering school full-time, and needs permanency and [the] ability to engage in extracurricular activities." Thus, the court's finding that the impending start of full-time school, which was not pleaded in the plaintiff's motion to modify custody, constituted a material change in circumstances appears

to be technically improper because it was not alleged specifically in the plaintiff's motion.

Nonetheless, that determination alone does not end our inquiry. See *Landry* v. *Spitz*, supra, 102 Conn. App. 43–44. The purpose underlying the requirements of Practice Book § 25-26 (g), similar to pleadings in other types of civil actions, is to provide notice of the alleged bases for the modification. See *Gosselin* v. *Gosselin*, supra, 110 Conn. App. 147. We also recognize that, unlike other types of civil actions, child custody actions are ultimately governed by the child's best interests. See General Statutes § 46b-56 (b) and (c); *Barros* v. *Barros*, 309 Conn. 499, 517, 72 A.3d 367 (2013) ("[t]he touchstone for the court's custody determination is the best interests of the child" [internal quotation marks omitted]).[10] Consequently, although a court cannot determine a fact or issue beyond the reasonable cognizance of the parties; see *Strohmeyer* v. *Strohmeyer*, supra, 183 Conn. 355–56; our rules of pleading are generally less restrictive as to what the court can decide in these matters. See *Morrill* v. *Morrill*, supra, 83 Conn. 459; *Kidwell* v. *Calderon*, supra, 98 Conn. App. 758–59.

It is with these principles in mind that we consider whether the defendant was unduly prejudiced or surprised by the court's consideration of this ground not raised in the plaintiff's filed motion. An important consideration in this respect is whether she was aware that the changes brought on by the child's impending commencement of full-time schooling were at issue even without having been pleaded. See *Gosselin* v. *Gosselin*, supra, 110 Conn. App. 147. The proposition that full-time school would require readjustment of the existing orders was presaged prior to the hearing on the plaintiff's motion to modify. In the 2012 decision, Judge Klatt found: "[T]he court will find that the defendant's relocation was for a legitimate purpose, the location is reasonable in light of that purpose, and that it is in the best interests of the [child]. While the defendant's relocation is not distant, it is nevertheless necessary to make some changes regarding the parenting schedule for the benefit of the [child]. In the future, *more may be necessary, given that the child will soon reach school age*."[11] (Emphasis added.) Similarly, though recommending in her report that the custody orders remained unchanged, the family relations officer noted: "The need for the change [to the visitation orders] in the parenting plan arises from the fact that [the child] has started kindergarten. The current routine has this young girl traveling too frequently and too far now that she is in school. *This will be even more challenging once her school day is full-time*." (Emphasis added.) Thus, the fact that the impending start of full-time school by the child—no longer a distant concern at the time of the hearing on the plaintiff's motion to modify—might be raised in some capacity was firmly within the contemplation of the parties prior to the April, 2014 hearing.[12]

Further, the matter was discussed explicitly during the hearing on the plaintiff's motion to modify custody in terms that made it clear that the plaintiff was asserting that the start of full-time school itself was not only a factor to be considered in the child's best interests, but also represented a material change in circumstances. In particular, the plaintiff's attorney posed multiple questions to the family relations officer concerning the circumstances governing the prior order and whether the commencement of full-time school would require a change to the parties' parenting plan. The guardian ad litem similarly testified about her understanding as to what the court intended in the 2012 decision when it addressed the impact of full-time school on the parenting plan.[13] She also testified as to the changes caused by the commencement of full-time schooling, and the impact of school on the child's life and well-being.[14] Finally, the attorneys for both parties emphasized in closing argument the disruption that the child's full-time attendance at school would have on the existing parenting plan.[15]

Under these circumstances, it is clear that the defendant had notice that this issue was presented as the material change in circumstances, and, that she had a full and fair opportunity to address this issue. The questions by the plaintiff's attorney, as well as the responses to those questions by the family relations officer during cross-examination and by the guardian ad litem on direct examination, clearly indicate that the impending commencement of full-time school was to be considered, not merely as a factor in appraising the child's present best interests, but as a significant change in itself. The defendant also had a full and fair opportunity to address this issue during the hearing. Additionally, the defendant's attorney argued during closing argument that the child's attending school full-time was the "big change" in this case. Consequently, we conclude that the failure of the plaintiff to raise this ground in filing his motion to modify did not unduly prejudice or surprise the defendant.[16]

Because the defendant had notice that the child's change to full-time schooling might constitute a material change in circumstances that would require revisiting the existing custody and visitation orders, this claim was framed as such during the hearing on the plaintiff's motion to modify, and the defendant had a full and fair opportunity to address this issue during the hearing, we agree with the plaintiff that the defendant has failed to preserve for appeal her other arguments related to the court's determination that a material change was the fact that the child was about to begin school full-time.[17] Therefore, the defendant has waived her two remaining claims; see Practice Book § 60-5; and we will not reach them.[18]

II

The defendant's remaining claims allege various errors by the court in its appraisal of the child's best interests. She argues that the court erred in modifying the primary physical custody of the child without basing its orders on her present best interests. In particular, the defendant points to two distinct aspects of the 2014 decision, which she argues demonstrate that the court was not considering the present best interests of the child: the court's stated concerns about potential or possible future circumstances and risks;[19] and the court's "hyper-focused" reliance on information that occurred prior to the 2012 decision. Thus, the defendant argues, the court impermissibly premised its decision on both speculation and stale evidence, and not on the child's present best interests.

In modifying a custody order, the court is required to determine the best interests of the child. See General Statutes § 46b-56 (b).[20] "Among the various factors the court may consider when determining the best interest of the child are the parties' parenting skills . . . the child's emotional ties to each parent . . . the psychological instability of the parent and whether the child is in a stable and loving environment.[21] . . . In reaching a decision as to what is in the best interests of a child, the court is vested with broad discretion and its ruling will be reversed only upon a showing that some legal principle or right has been violated or that the discretion has been abused." (Footnote added; internal quotation marks omitted.) *Malave* v. *Ortiz*, 114 Conn. App. 414, 424–25, 970 A.2d 743 (2009).

"In making a determination of custody . . . the trial court is bound to consider the child's present best interests and not what would have been in her best interests at some previous time." (Emphasis omitted; internal quotation marks omitted.) *Blake* v. *Blake*, 207 Conn. 217, 224, 541 A.2d 1201 (1988). "In the exercise of its awesome responsibility to find the most salutary custodial arrangement . . . the court must however take account of the parents' past behavior, since it must evaluate their present and future parenting ability and the consistency of their parenting for the purpose of determining which parent will better foster the children's growth, development and well-being." *Yontef* v. *Yontef*, 185 Conn. 275, 283, 440 A.2d 899 (1981); accord *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 304, 536 A.2d 978 ("a party's prior conduct . . . may have a direct bearing on his or her present fitness to be a custodial parent"), cert. denied, 207 Conn. 806, 540 A.2d 374 (1988).

In the context of a modification hearing, whether, and to what degree, a court may consider behavior that precedes the order being modified depends on the purpose for which it is being considered. "[B]efore an order as to custody . . . of children may be modified there must have been a material change of circumstances after the order was issued. . . . According to

this rule, circumstances existing prior to or at the time of the initial custody order are not grounds for a change of custody unless since that order there has been a material change in circumstances which puts into question the propriety of continuing the existing custody order.[22] . . . If such a material change is found, the court may then consider past conduct as it bears on the present character of a parent and the suitability of that parent as custodian of the child." (Citations omitted; footnote added; internal quotation marks omitted.) *Simons* v. *Simons*, supra, 172 Conn. 342–43.

After a careful review of the 2014 decision and the record, we disagree with the defendant that the statements made by the court in the 2014 decision demonstrate that it was engaged in anything other than an examination of the present best interests of the child when it considered this past conduct. Although the court discussed many actions that preceded the 2012 decision, it appears to have relied on these actions to place in context the defendant's more recent actions as continuing a pattern of behavior that has interfered over several years with the parental relationship between the plaintiff and the child.[23] As such, we cannot conclude that the court erred in according some weight to this parental behavior now that the child was about to begin school full-time, as there was evidence concerning the effect that her entering school full-time would have on the child's schedule, schoolwork, and extracurricular activities and her resulting availability to the noncustodial parent.

The defendant also contends that the statements by the court that it had concerns regarding certain possibilities that might arise suggest that the court engaged in mere speculation concerning the child's best interests. We disagree.

In addition to the court's explicit findings that the parties have considerable trouble communicating, there also were indications in the file and evidence before the court that the parties historically had been better able to resolve issues than they were at the time of the hearing[24] and that recent efforts to rectify their issues communicating had been unsuccessful.[25] The court also heard testimony from the guardian ad litem that, if the parties did not work on their communication issues with a coparenting counselor, it would be "problematic" for the child. On the basis of evidence presented, the court found that the child had been unable to participate in certain activities due to the parties' inability to reach an agreement. Under these circumstances, the court's fear that any continued deterioration in the parties' ability to communicate would negatively impact the child was not unreasonable or merely speculative. Rather, the court considered the past and present behavior of the parties, and their present and future ability to parent the child, as it was explicitly permitted

to do pursuant to our law; see General Statutes § 46b-56 (c); *Blake* v. *Blake*, supra, 207 Conn. 224–25; and made a determination that, in light of the fact that the child was to begin school full-time, her then best interests required giving the plaintiff primary physical custody.

We note further that the court's primary focus throughout its memorandum of decision was clearly on which parent was better suited to address the child's needs as she was about to begin school full-time. An examination of a child's best interests permits a court to consider not only which parent is better able to meet the child's present needs, but also permits some consideration of how those present needs affect the child's long-term best interests. See *Blake* v. *Blake*, supra, 207 Conn. 224–25 (court must "evaluate [parents'] present and future parenting ability and the consistency of their parenting for the purpose of determining which parent will better foster the children's growth, development and well-being" [internal quotation marks omitted]); cf. *Newman* v. *Newman*, 235 Conn. 82, 96, 663 A.2d 980 (1995) (guardian ad litem may recommend against child's articulated wishes because "the contrary course of action would *be in the child's long term best interests, psychologically or financially*" [emphasis added]).

Finally, the defendant contends that the court improperly disregarded the testimony and recommendations of both the family relations officer and the guardian ad litem. Clearly, the trial court is not required to accord testimonial evidence any particular weight, and it may ignore or adopt, in whole or in part, such testimony as it weighs the credibility of the witnesses.[26] See *Yontef* v. *Yontef*, supra, 185 Conn. 281; *Brown* v. *Brown*, 132 Conn. App. 30, 40, 31 A.3d 55 (2011); *Azia* v. *DiLascia*, 64 Conn. App. 540, 548 n.9, 780 A.2d 992, cert. denied, 258 Conn. 914, 782 A.2d 1241 (2001).

In summation, our review of a court's judgment on a motion to modify custody generally is limited to whether it abused its discretion, both with respect to its determination of whether a material change in circumstances has occurred; see *Clougherty* v. *Clougherty*, supra, 162 Conn. App. 868; and with respect to whether modifying custody is in the child's best interests. See *Hibbard* v. *Hibbard*, 139 Conn. App. 10, 21, 55 A.3d 301 (2012). "As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) Id. We also accord deference to the court's assessment of witness credibility and the weight to be accorded to their testimony. Id., 25. On the record before us, we are unable to conclude that the defendant has demonstrated that the court abused its discretion in the 2014 decision.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Prior to the hearing before the trial court on the motion to modify custody at issue in this appeal, the defendant's attorney informed the court that the defendant had changed her last name to Dimitrova.

[2] We note that in appeals involving a minor child, a guardian ad litem is required to submit certain documentation pursuant to our rules of practice. See Practice Book § 67-13 (guardian ad litem required to file either own brief, statement adopting brief of appellant or appellee, or statement explaining why issues on appeal do not implicate child's interests). Although listed as a recipient of all three briefs filed in this appeal pursuant to Practice Book § 67-2, the guardian ad litem did not file an appearance, submit the documentation required by Practice Book § 67-13, or attend oral argument before this court. Both parties were aware of this fact before beginning their argument to this court, and neither side objected to proceeding without the guardian ad litem's input. The guardian ad litem testified at the hearing on the motion to modify custody that physical custody should remain with the defendant; these transcripts are part of the record, and no information has been brought to this court's attention suggesting that the guardian's position has changed since that hearing. Thus, under these unusual circumstances, we will address the merits of this appeal without the documentation required by Practice Book § 67-13.

[3] In reviewing the procedural history of this case, the court noted, inter alia, that, during the pendency of his April, 2011 motion to modify custody, the plaintiff filed a motion seeking an order preventing the defendant from moving the child to New York. On July 14, 2011, the court, *Schofield*, *J.*, entered an order that the parties were required to maintain their Connecticut residences until further order of the court. Despite this order, the defendant moved to New York with the child. Subsequently, Judge Schofield found the defendant in contempt of court, and physical custody of the child was awarded to the plaintiff in a separate order of the court, *Frankel*, *J.*

[4] The plaintiff's additional August 25, 2011 motion for an order concerning vacation issues and his April 12, 2012 motion for contempt were heard also by the court.

[5] We note that the defendant filed a motion to modify visitation on April 1, 2013. Although not listed as one of the motions that the court addressed in its memorandum of decision, the issues concerning the defendant's proposed changes to visitation appear to have been addressed in the April, 2014 hearing.

[6] Neither party has claimed that the 2012 decision was not in the best interests of the child.

[7] General Statutes § 46b-56 (c) provides in relevant part a nonexhaustive list of factors that a court may consider when modifying a custody order. The enumerated factors include: "(1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of

the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. . . .”

[8] The plaintiff also asserts that, because the defendant neither objected to testimony concerning the changes involving full-time school, nor otherwise argued to the trial court that this change could not constitute a material change of circumstances, she has waived any ability to claim it as error on appeal. The defendant responds that her attorney had noted that there were only three grounds alleged in the plaintiff's motion to modify and that she was under no obligation to presume that the trial court would commit legal error when entering its orders.

We will consider the defendant's first claim of error that there was no allegation that there was a material change of circumstances on the basis of the imminent full-time attendance of the child in school. We do so because the defendant's attorney asserted multiple times during the course of the April, 2014 hearing that only three grounds were alleged as material changes in circumstances in the plaintiff's motion to modify custody. If we disagree with this first claim, however, we will consider whether the defendant's remaining arguments about the court's consideration of, or reliance on, the child's impending commencement of full-time schooling were not preserved for appellate review.

[9] Specifically, the court found that the defendant had filed motions seeking child support and to modify visitation in New York, even after a Connecticut court had unambiguously ordered that jurisdiction remain in Connecticut; see footnote 3 of this opinion; and that she had “unilaterally changed pre-school and child care arrangements without consultation with [the plaintiff].”

[10] Indeed, in the context of a procedural due process claim, our Supreme Court has noted that “the [parent's] custody interest is legitimate only to the extent that those procedures facilitate an accurate custody determination, that is, a custody determination consistent with the child's best interest.” *Barros* v. *Barros*, supra, 309 Conn. 509. The parent's interest, though legitimate, is diminished further relative to the child's best interests in cases such as this one, where both parents are seeking custody. See id., 509–10.

[11] We disagree with the defendant that Judge Klatt's statements in the 2012 decision concerning prospective changes to the parenting plan indicate that the court necessarily contemplated only changes to the visitation schedule. In particular, we note that, although the court stated in the text of its memorandum of decision that it would allow the relocation, the court's actual custody order does not appear directly there; rather, it incorporated the defendant's parenting plan in its entirety, which defined both the custody and visitation rights of each parent. Further, the explicit recognition in the 2012 decision that the child's beginning full-time school might result in changes to the parenting plan makes this case distinguishable from our recent decision in *Clougherty* v. *Clougherty*, supra, 162 Conn. App. 857. In that case, we held that the trial court had not abused its discretion in finding that no material change in circumstances had occurred due to the child's entering elementary school because the judge that entered the original custody order “contemplated that the child would grow up and attend school in the state of his primary residence.” Id., 871.

[12] We also recognize that during the period between the 2012 decision and the April, 2014 hearing, the defendant herself had relied on a prospective change in the child's schooling as justifying a modification of the existing custody and visitation orders. In her April 1, 2013 motion to modify, she noted that “the [child] will soon be attending school on a regular basis and the [defendant] does not believe that the current parenting time schedule . . . will continue to be appropriate at that time,” and requested that the court modify the visitation schedule based on this impending change. Although we note that it seems likely that the defendant intended the reference to be the child's regular attendance in half-day kindergarten, which had not yet begun when her motion was filed, her reliance on it demonstrates, at the very least, that she was aware prior to the April, 2014 hearing that changes in the child's schooling would be disruptive to the current parenting plan.

[13] In response to the plaintiff's questions during direct examination, the guardian ad litem testified that her understanding of Judge Klatt's statements in the 2012 decision was that a change would be required because the 2012 decision was structured as “a true shared custody arrangement,” and this arrangement would not work once the child started school full-time. The guardian ad litem later testified as to her belief that “the fact that [the child

is] going to [full-time] school is the more critical change than the [fact that] . . . the parties have lived apart since . . . Judge Klatt's order."

[14] The guardian ad litem testified during direct examination that she did not view first grade as comparable to either preschool or kindergarten because first grade would be "more demanding" on the child. Although she agreed with the characterization by the plaintiff's attorney that attending full-time school would be comparable to the current arrangement of a morning enrichment program and an afternoon kindergarten in terms of the time that the child spent away from home, the guardian ad litem also recognized that there were several important differences. Specifically, she noted that the enrichment program is "probably more fun" than full-time school would be, and agreed with the plaintiff's attorney that full-time school would include a number of accompanying changes, such as activities, sports, homework, and after-school functions.

[15] In her closing argument, the plaintiff's attorney stated that, "if [the plaintiff] were to have the child more of the time for school purposes in Fairfield, it would be a better situation, [in] that the parties would communicate better, which is the ultimate goal, as well, in the terms of the best interests of the child." Similarly, in urging that physical custody remain with the defendant and that the court adopt whatever orders that it deemed appropriate, the defendant's attorney in his closing argument directed the court's attention to the statements by the family relations officer and guardian ad litem. In particular, the defendant's attorney noted that "the fact that the child is in school" is "our big change here."

[16] We agree with the defendant that there is an important distinction to be drawn between motions to modify custody, which generally require a material change in circumstances; see *Clougherty* v. *Clougherty*, supra, 162 Conn. App. 868; and motions to modify visitation alone, which do not require a material change. *Balaska* v. *Balaska*, 130 Conn. App. 510, 515–16, 25 A.3d 680 (2011); *Szczerkowski* v. *Karmelowicz*, 60 Conn. App. 429, 433, 759 A.2d 1050 (2000). Under the circumstances of this case, however, we do not believe any reliance by the defendant on this distinction to have been prejudicial to her or to have surprised her.

[17] For reasons already discussed, we disagree with the defendant's assertion that these matters arose subsequent to trial. We also note that, although the defendant's attorney stated at trial that only three grounds were raised in the plaintiff's motion; see footnote 8 of this opinion; at no point did he assert that the impending commencement of full-time schooling *could not* constitute a material change of circumstances, either absolutely because it had yet to occur, or under the circumstances of this case because there was not a fundamental difference between full-time school and the child's present enrollment in the morning enrichment program and afternoon kindergarten. "[A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Citations omitted; emphasis in original; internal quotation marks omitted.) *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619–20, 99 A.3d 1079 (2014).

[18] Even if we were to consider these arguments to the extent that they could influence the result of this appeal, we do not conclude that a different outcome would be required for two reasons. First, this court has held that evidence of a prospective event occurring within a few months of a hearing on a motion to modify custody can constitute a material change in circumstances. See *Gillespie* v. *Jenkins*, 127 Conn. App. 228, 234, 14 A.3d 1019 (2011) (trial court could reasonably find mother's impending retirement "change in circumstances that allowed her more time to deal with the child's needs"). Second, the court had evidence before it that full-time school was not comparable in many important ways to the child's current schedule, even though full-time schooling might be comparable to the current schedule in terms of the length of time that the child was physically present. See footnote 14 of this opinion.

A court's determination of whether a material change in circumstances has occurred is a fact-specific and individualized evaluation; see *Clougherty* v. *Clougherty*, supra, 162 Conn. App. 870 (noting that "no bright-line rules exist" for making this determination, but "several relevant considerations" exist); see also *Hibbard* v. *Hibbard*, 139 Conn. App. 10, 22–23, 55 A.3d 301 (2012) (upholding implicit finding of material change in circumstances where trial court found that disputes over visitation became more frequent and contentious, and thereby rendered original order unworkable); and is

reviewed for an abuse of discretion. See *Clougherty* v. *Clougherty*, supra, 873; 27C C.J.S. 255, Divorce § 1053 (2005) ("[t]he determination of the existence of changed circumstances is a matter of discretion"). We discern no abuse of discretion in these findings by the court on the record before us.

[19] In particular, the defendant directs this court's attention to the statements by the trial court that it was troubled by "the distinct possibility that these problems will grow in frequency, intensity, and severity, and will negatively affect the child."

[20] General Statutes § 46b-56 (b) provides in relevant part: "In making or modifying any order . . . the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. . . ."

[21] As noted previously, § 46b-56 (c) provides a nonexclusive list of factors that a court may consider in determining the child's best interests. See footnote 7 of this opinion.

[22] The court obviously must consider the facts on which the prior order or modification was premised in determining whether the circumstances have, in fact, materially changed subsequent to the order being modified. See *Malave* v. *Ortiz*, supra, 114 Conn. App. 424.

[23] Thus, we also disagree with the defendant's argument that the court's consideration of certain aspects related to the defendant's 2011 move to New York constitutes an impermissible attempt to relitigate the relocation or a determination by this court that the 2012 decision was not, in fact, in the child's best interests. Rather, the court relied primarily on that evidence for the purposes of considering the child's best interests in light of the impending commencement of full-time school rather than as a punitive collateral attack on the defendant's move to New York.

[24] In the 2012 decision, Judge Klatt stated: "The parties have in the past reached agreements over a parenting plan for custody and visitation, and any subsequent modifications." Further, the plaintiff testified at the hearing on this motion to modify that the communication between the parties had been better when he had physical custody and that they were able to communicate civilly and through e-mail, text, and phone calls.

[25] Pursuant to the 2012 decision, the parties were required to use myfamilywizard.com; both parties admitted to the court, however, that by April, 2014, they were no longer using the website. A subsequent court order required the parties to attend coparenting counseling; after attending a few sessions, however, the parties had not made any further appointments and were not attending counseling at the time of the hearing on the motion to modify at issue in this appeal.

[26] It is important to note that the family relations officer admitted during cross-examination that there had been significant changes since she had finished her report, and she stated that the report should be updated because of those changes. Thus, it is difficult to understand how the court's alleged failure to give this report and recommendation any significant weight is indicative of error.

---