******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LISA A. DUFRESNE *v.* GERALD E.
DUFRESNE, JR.
(AC 41582)

Lavine, Elgo and Pellegrino, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the judgment of the trial court
granting the defendant's motion to modify visitation with the parties'
minor child. The trial court previously had granted the plaintiff sole
legal custody of the child, ordered that the child continue in counseling
with the child's therapist, and referred the matter to family relations
to monitor the defendant's supervised visitation with the child. The
defendant alleged in his motion to modify only that he had been denied
visits and phone communication with the child. The motion made no
mention of the child's counseling relationship with the therapist and
contained no request to terminate that relationship. At the hearing on
the defendant's motion, the court concluded that it was not in the child's
best interests to continue counseling and terminated the therapy. The
court also heard testimony from S, a family relations counselor, about,
inter alia, reports that had been prepared by parenting services agencies
that had been involved in the supervised visitation between the defen-
dant and the child. The reports were not introduced into evidence, and
the defendant did not object to S's testimony on the basis of hearsay.
The court did not credit S's testimony and determined that some of it
was unreliable and untrustworthy because it was hearsay. On appeal
to this court, the plaintiff claimed that the trial court improperly termi-
nated the child's counseling with the therapist and failed to credit S's
testimony. *Held*:

1. The trial court improperly granted the defendant's motion to modify
visitation; that court abused its discretion by, sua sponte, issuing an
order terminating the child's counseling with the therapist, as the motion
to modify did not seek joint custody of the child or to terminate the
counseling, and, thus, the parties had no notice that the court intended
to address that issue, which was not properly before the court, and the
issue of the child's therapy was for the plaintiff to decide, as it was the
plaintiff's right to make decisions in the child's interests and the plaintiff
had engaged the therapist.

2. The trial court abused its discretion by failing to credit S's testimony, as
the substance of her testimony pertained to the supervised visits that the
court had ordered and was probative of whether to grant the defendant's
motion to modify, and although S's testimony contained hearsay, the
defendant failed to object to it on that ground.

(*One judge concurring separately*)

Argued April 11—officially released July 30, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Windham at Putnam and tried to the court,
*Fuger*, *J.*; judgment dissolving the marriage and grant-
ing certain other relief; thereafter, the court, *A. dos
Santos*, *J.*, granted the defendant's motion to modify
visitation, and denied the plaintiff's motions for attor-
ney's fees and for an order to require the defendant to
request leave of the court prior to filing certain motions,
and the plaintiff appealed to this court; subsequently,
the court, *A. dos Santos*, *J.*, issued an articulation of
its decision. *Reversed; further proceedings*.

*Campbell D. Barrett*, with whom were *Johanna S.*

*Katz* and, on the brief, *Jon T. Kukucka,* for the appellant (plaintiff).

*Opinion*

LAVINE, J. In this postdissolution appeal, the plaintiff, Lisa A. Dufresne,[1] appeals from the judgment of the trial court granting the motion to modify visitation with the parties' minor child (motion to modify) filed by the self-represented defendant, Gerald E. Dufresne, Jr. On appeal, the plaintiff claims that, in granting the motion to modify, the court improperly (1) concluded that it was not in the child's best interests to continue counseling with her therapist and terminated the relationship, and (2) failed to credit the testimony of a family relations counselor.[2] We reverse the judgment of the trial court.

The following facts and procedural history as disclosed by the record are relevant to this appeal. The parties were married on October 14, 2006. Their only child, a daughter, was born in January, 2008. The plaintiff commenced an action to dissolve the marriage on March 24, 2010. She also filed a motion requesting that the matter be referred to "family relations" and that a guardian ad litem be appointed for the child.[3] On September 1, 2010, the parties entered into an agreement whereby the plaintiff relocated to Chicopee, Massachusetts. The parties agreed to joint legal custody of the child and that the issue of the child's primary residence was to be evaluated by the Family Relations Office (family relations) of the Court Support Services Division of the Judicial Branch.[4] The parties also agreed to a visitation schedule. On October 27, 2010, the defendant agreed to pay the plaintiff child support.

The trial court, *Fuger, J.*, dissolved the parties' marriage on April 29, 2011. Pursuant to the divorce decree, the parties were granted joint legal custody of the child, and the child's residence was "shared." The parties entered into an extensive and detailed parenting plan that provided for shared parenting time with the child.

On January 9, 2015, the matter was referred to family relations for a comprehensive evaluation. On July 6, 2015, the plaintiff filed a motion for modification of visitation and parenting time. Following a hearing held on July 29, 2015, the court, *Graziani, J.*, granted the plaintiff sole legal custody of the child. The child was to continue in counseling, and the parties were to participate in the child's counseling as the therapist recommended. The defendant was to visit with the child as mutually agreed by the parties, and the parties were to use the Family Wizard program[5] to communicate.

On August 10, 2016, the defendant filed a "Motion to Open and Modify Access, Postjudgment," alleging that despite the court's order of July 29, 2015, that he have "access" to the child by mutual agreement, the plaintiff had not allowed him to have access to the child since October 15, 2015, and had not allowed telephone contact between him and the child since January 13, 2016.

On the same day, he also filed a motion for contempt in which he made the same allegations. By order dated October 5, 2016, the court, *A. dos Santos, J.*, denied the motion for contempt and issued the following orders: the defendant shall have supervised visitation at the supervision agency, Kids Safe; the parties shall reactivate their Family Wizard accounts, and cooperate and communicate through this medium or a different medium by mutual agreement; the matter shall be referred to family relations to monitor supervised visitation, and the parties shall cooperate with family relations; the plaintiff shall encourage the child to participate in visits with the defendant; and visits must be consistent and scheduled by the parties on a regular basis.

On August 30, 2017, the defendant filed the motion for modification that underlies the present appeal.[6] In his motion, the defendant alleged that he had been denied visitation and phone communication with the child. On September 14, 2017, the plaintiff filed a motion for an order requiring that the defendant request leave of the court before filing further orders for modification of custody or visitation. She also filed a motion for attorney's fees, postjudgment.

Judge dos Santos held a hearing on the parties' motions on October 18 and November 15, 2017. The plaintiff was represented by counsel; the defendant was self-represented. The court issued a memorandum of decision on March 12, 2018. The court found that after the October 5, 2016 hearing, family relations arranged for the defendant and the child to visit at the Access Agency on five occasions. The defendant testified that his visits with the child were positive for him and the child. He also testified that he had helped to rear the child from birth and had a good relationship with her. He was emotional when he saw the child after not having seen her for approximately two years. The defendant admitted that on one occasion he brought photographs to share with the child, which was not permitted by the agency. After realizing his mistake, the defendant returned the photographs to his motor vehicle. He also brought hot chocolate for the child, which also was not permitted during visits. The defendant became upset and exchanged words with Access Agency staff, but not in front of the child. The defendant has anger issues. According to the defendant, he was happy to see the child, and she was happy to see him. They spoke and played games together. The child appeared to be comfortable with him.

The court found that, following the supervised visits, Access Agency staff produced a written report, which was not introduced into evidence. The family relations counselor, Nicole Stutz, who arranged for the supervised visits, read from the report during her testimony at the hearing on the parties' motions. The court stated

that the assertions contained in the report were not subject to cross-examination because none of the individuals involved in the supervised visits came to court to testify as to their observations.

Following the five supervised visits, the parties agreed to transfer the matter to the Transitions in Parenting program, and the court entered orders in connection with the parties' agreement. A clinical social worker, Gregg LePage, met with the parties and the child, and issued a report. The report was not entered into evidence, but Stutz testified as to the contents of the report. LePage did not testify.

The court observed that the plaintiff did not testify at the hearing, and, therefore, the court did not hear her concerns for the child or about communication she may have had with the child about the visits. On the date of some of the defendant's supervised visits with the child, the plaintiff arranged playdates for the child at the conclusion of the visit.

The court found that the child's therapist, Patricia Hempel, has counseled the child once a week since September or October, 2015. On three occasions, Hempel utilized Trauma Forensic Cognitive Behavior Therapy, whereby the child essentially must relive the event when the defendant was taken away in an ambulance after he had expressed suicidal ideation. During the event, the defendant told the plaintiff to come for the child because he believed that he was not capable of taking care of her. Since then, the defendant has received counseling and is fully compliant with his prescribed medications. As a veteran, he counsels other veterans who suffer post-traumatic stress disorder, and he is in the company of children whose "parent veteran" has post-traumatic stress disorder. Hempel testified that it is not in the child's best interests to have contact with the defendant at the present time, including telephone contact. In addition, she opined that the child should not have further contact with the defendant until the child is twenty-three years old when her brain is fully developed.[7] The court disagreed with Hempel's opinion.

Prior to issuing its orders regarding the defendant's motion to modify, the court discussed the legal principles guiding its analysis. "The court has continuing jurisdiction over a custody decree . . . and the noncustodial parent retains the option to move to modify custody based on a substantial change in circumstances affecting the welfare of the children." (Citation omitted.) *Cookson* v. *Cookson*, 201 Conn. 229, 236, 514 A.2d 323 (1986). "The burden is on the party seeking modification to show the existence of a substantial change in circumstances." (Internal quotation marks omitted.) *Jaser* v. *Jaser*, 37 Conn. App. 194, 204, 655 A.2d 790 (1995). A material change in circumstances must be based on circumstances that have arisen since the prior order of custody. "If such a material change is found, the court

may then consider past conduct as it bears on the present character of a parent and the suitability of that parent as custodian of the child." *Simons* v. *Simons*, 172 Conn. 341, 342–43, 374 A.2d 1040 (1977). The court must make the necessary findings that a change of custody would be in the best interest of the child. See *Hibbard* v. *Hibbard*, 139 Conn. App. 10, 21, 55 A.3d 301 (2012).

The court found that the defendant suffers from post-traumatic stress disorder and the effects of Lyme disease. He has received counseling and takes prescribed medications for post-traumatic stress disorder. He counsels fellow veterans regarding post-traumatic stress disorder and is, at times, in the presence of children. The court, therefore, found that there were changed circumstances.[8]

The court also found that during the incident in which the defendant experienced suicidal ideation, he recognized his illness and asked the plaintiff to come for the child. The child saw the defendant taken away by ambulance. The court was not convinced that the defendant presents a danger to the child. The court opined that Hempel "is doing more damage than helping the child. She continues to reinforce the traumatic event with the child by repeating the event when the defendant went by ambulance to the hospital." Although it had not been asked to do so, the court concluded that it is not in the best interests of the child to continue counseling with Hempel.

Moreover, the court found that following a hearing on October 5, 2016, it had ordered the defendant to see the child at Access Agency. Although the court had ordered that the visits be consistent and scheduled by the parties on a regular basis, the defendant has seen the child only five times. The intent of the October 5, 2016 order was not to limit the defendant's access to the child to five occasions.

The court also found that the plaintiff did not testify during the hearing[9] but that she relied on hearsay and double hearsay testimony from Stutz to justify denying the defendant access to the child in the future. It noted that "[h]earsay means a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted." (Internal quotation marks omitted.) *Walker* v. *Housing Authority*, 148 Conn. App. 591, 600, 85 A.3d 1230 (2014). Hearsay is generally inadmissible. See Conn. Code Evid. § 8-2. The reason for the hearsay rule is because hearsay testimony is deemed unreliable. See *State* v. *Heredia*, 139 Conn. App. 319, 331, 55 A.3d 598 (2012) (discussing hearsay within hearsay), cert. denied, 307 Conn. 952, 58 A.3d 975 (2013).

The court found that although Stutz testified about the visits at Access Agency and testing at the Transitions

in Parenting program, she was not present during these events. As a general case manager, her role, as assigned by the court, was to facilitate and direct the parties to the services offered in the community and not to make assessments or recommendations on the case. The court did not credit her testimony concerning the Access Agency or the Transitions in Parenting program because she did not observe the alleged events contained in the reports from those agencies. During her testimony, Stutz responded affirmatively when asked whether the Transitions in Parenting program report, which was not placed into evidence, concluded that reintroducing the defendant to the child's life would be "counterintuitive and may result in a crisis to the child's life."

The court apparently considered the testimony but disagreed with the conclusion by stating in its opinion that "[y]oung children need encouragement from both parents to continue their relationship with their parents." The child, who spends most of her time with the plaintiff, is not being encouraged by the plaintiff to continue to see the defendant. The plaintiff's decision to keep the child in counseling with Hempel and arrange playdates for the child on the dates the defendant was to have supervised visits "serve only to alienate the child from her father," the court concluded. Alienation of one parent by the other from the child, and exposing the child to conversations that are critical of the other parent, may constitute a substantial change in circumstances. See *Naumann* v. *Naumann*, Docket No. FA-15-6057847-S, 2016 WL 1710780, *1 (Conn. Super. April 8, 2016) (*Shluger, J.*); *Fiore* v. *DeRuosi*, Docket No. 14-P-1736, 2015 WL 6758521, *2 (Mass. App. November 6, 2015) (decision without published opinion, 88 Mass. App. 1112, 40 N.E.3d 1055 [2015]). Coercive or manipulative acts designed to alienate the other parent and interfere with his or her relationship with the child are proper considerations regarding the best interests of the child. See *Eisenlohr* v. *Eisenlohr*, 135 Conn. App. 337, 348, 43 A.3d 694 (2012).[10]

The court concluded that the plaintiff had failed to show by credible evidence that the defendant's supervised visits with the child should end. In fact, the court had ordered that supervised visits were to continue and eventually lead to unsupervised visits. The defendant is willing to continue with supervised visits and wants telephone contact with the child. The court ultimately concluded that it is in the child's best interests to continue to have visits with the defendant, notwithstanding the opinions of Hempel and family relations. It, therefore, granted the defendant's motion for modification.[11] The court also issued numerous orders concerning the parties and the child. The plaintiff appealed from the judgment granting the defendant's motion to modify.

On April 2, 2018, the plaintiff filed a motion to reargue,

claiming that the court erred in failing to credit Stutz' testimony because her testimony was in accord with Family Services General Case Management policy and the defendant did not object to Stutz' testimony on hearsay grounds. The plaintiff also claimed that the court improperly terminated the child's counseling with Hempel, as the defendant did not request it in his motion to modify. He requested only that he have supervised visits and telephone communication with the child. She added that the parties had no notice that termination of the child's counseling would be considered and, therefore, the court violated the parties' rights to due process. Moreover, the plaintiff argued that she has sole custody of the child and the legal authority to make decisions for the child. Judge dos Santos denied the motion for reargument.

On June 29, 2018, the plaintiff filed a motion for articulation, asking the court to articulate answers to six questions. On July 13, 2018, the court denied articulation requests one, two, five and six, but did articulate as to requests three and four about why it "believed it could not rely on hearsay testimony" and "why [it] would not rely on hearsay evidence when the Family Relations Case Management program was designed to permit hearsay evidence." The court articulated that it found some of Stutz' testimony unreliable and untrustworthy because it was hearsay. "The purpose behind the hearsay rule is to effectuate the policy of requiring that testimony be given in open court, under oath, and subject to cross-examination." (Internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 573, 680 A.2d 301 (1996). The court stated that "Stutz was not present during the alleged doings of the witnesses who could have been called to testify by the plaintiff." Because it did not find the hearsay evidence reliable and trustworthy, it did not credit it.[12]

Before we address the plaintiff's claims on appeal, we set forth the well known standard of review we apply in domestic relations cases. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Williams* v. *Williams*, 276 Conn. 491, 496–97, 886 A.2d 817 (2005).

I

The plaintiff first claims that the court abused its discretion by terminating therapy for the parties' child because (1) the defendant's motion to modify visitation did not seek to terminate the child's counseling relationship with her counselor, and (2) the plaintiff has sole

legal custody of the child. We agree with the plaintiff.

A

The plaintiff first claims that the court lacked authority to consider the child's relationship with her counselor because there was no notice that the court would consider the issue. We agree.

In his motion to modify, the defendant alleged that he had been denied visits and phone communication with the child pursuant to the court's orders of October 5, 2016. The motion to modify makes no mention of the child's therapy and contains no request to terminate it.

"General Statutes § 46b-56 provides trial courts with the statutory authority to modify an order of custody or visitation." (Internal quotation marks omitted.) *Clougherty* v. *Clougherty*, 162 Conn. App. 857, 868, 133 A.3d 866, cert. denied, 320 Conn. 932, 134 A.3d 621, and cert. denied, 320 Conn. 932, 136 A.3d 642 (2016). Motions to modify are governed by Practice Book § 25-26 (e), which provides "[e]ach motion for modification shall state the specific factual and legal basis for the claimed modification and shall include the outstanding order and date thereof to which the motion for modification is addressed." (Internal quotation marks omitted.) *Petrov* v. *Gueorguieva*, 167 Conn. App. 505, 513, 146 A.3d 26 (2016). "In exercising its statutory authority to inquire into the best interests of the child, the court cannot sua sponte decide a matter that has not been put in issue, either by the parties or by the court itself. Rather, it must . . . exercise that authority in a manner consistent with the due process requirements of fair notice and reasonable opportunity to be heard." (Internal quotation marks omitted.) Id., 515. "[I]t is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings." (Internal quotation marks omitted.) *Breiter* v. *Breiter*, 80 Conn. App. 332, 335, 835 A.2d 111 (2003).

In the present case, the defendant did not seek to terminate the child's counseling with Hempel and, therefore, the parties had no notice that the court intended to address the issue of the child's therapy with Hempel, let alone terminate it. The issue was not properly before the court. We, therefore, conclude that the court abused its discretion by sua sponte issuing an order terminating the child's therapy with Hempel.

B

The plaintiff also claims that the court abused its discretion by terminating the child's therapy relationship with Hempel because the plaintiff has sole legal custody of the child. We agree.

Our Supreme Court has explained that the sole custodian "has the ultimate authority to make all decision regarding a child's welfare, such as education, religious instruction and medical care . . . ." *Emerick* v. *Emer-*

*ick*, 5 Conn. App. 649, 657 n.9, 502 A.2d 933 (1985), cert. dismissed, 200 Conn. 804, 510 A.2d 192 (1986); see also R. Rutkin et al., 8 Connecticut Practice Series: Family Law and Practice (2010) § 42:7, p. 516. In the present case, the plaintiff had engaged Hempel to be the child's therapist. A parent's right to make decisions in the interest of his or her children is of constitutional dimension. See *Troxel* v. *Granville*, 530 U.S. 57, 65–69, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). The defendant did not seek to terminate the therapy relationship, nor did he seek joint custody. The issue before the court was the defendant's request for visits and telephone communication with the child. The issue of the child's therapy was for the plaintiff to decide. The court, therefore, improperly issued an order terminating the child's therapy with Hempel.

## II

The plaintiff's second claim is that the court improperly refused to credit the testimony of the family relations counselor, which was admitted into evidence without objection. We agree.

In granting the defendant's motion to modify, the court stated that although Stutz "testified about what allegedly occurred at Access Agency and the testing by [the Transitions in Parenting program], she was not present during these events. Her testimony relied solely on hearsay events and occurrences outside her observations. Finally, the family relations counselor testified that as a general case manager, which was the role assigned to her by the court, [her role] was to facilitate and direct the parties to the services offered in the community and not to make assessments or recommendations on the case at issue. The court does not credit her testimony concerning Access Agency or [the Transitions in Parenting program] because she did not observe the alleged events contained in the Access Agency report and the [Transitions in Parenting program] report that were never introduced into evidence." In its articulation, the court stated that it found some of Stutz' testimony unreliable and untrustworthy because it was hearsay.

During the hearing on his motion to modify, the defendant did not object to Stutz' testimony on the basis of hearsay. "Hearsay evidence admitted because no objection was voiced can be considered to prove the matters in issue for whatever its worth on its face. *Sears* v. *Curtis*, 147 Conn. 311, 317, 160 A.2d 742 (1960)." *Derderian* v. *Derderian*, 3 Conn. App. 522, 528, 490 A.2d 1008, cert. denied, 196 Conn. 810, 811, 495 A.2d 279 (1985). "Evidence admitted without objection remains evidence in the case subject to any infirmities due to any inherent weaknesses. . . . The trier may not, however, rely only on hearsay evidence which is lacking in rational probative force." (Citation omitted.) *Marshall* v. *Kleinman*, 186 Conn. 67, 72, 438 A.2d 1199 (1982).

A "failure to make a sufficient objection to evidence which is incompetent waives any ground of complaint as to the admission of the evidence. But it has another effect, equally important. If the evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have." (Internal quotation marks omitted.) *Cohen* v. *Cohen*, 11 Conn. App. 241, 248, 527 A.2d 245 (1987).[13]

Our review of Stutz' testimony indicates that although it contained hearsay and double hearsay, the defendant failed to object to the testimony on hearsay grounds. The substance of the testimony pertained to the supervised visits that the court had ordered and, thus, was probative of the issue before the court, namely, whether to grant the defendant's motion to modify. The court, therefore, abused its discretion by failing to credit the testimony of the family relations counselor on the basis of her hearsay testimony.

For the foregoing reasons, we conclude that the court improperly granted the defendant's motion to modify and remand the case for a new hearing on the motion to modify.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion PELLEGRINO, J., concurred.

[1] The plaintiff's maiden name has been restored to her, and she is now known as Lisa A. Blasdell. We refer to her as the plaintiff in this opinion.

[2] The defendant failed to comply with this court's December 31, 2018 order to file an appellee's brief on or before January 14, 2019. This court, therefore, ordered that the appeal shall be considered on the basis of the plaintiff's brief and the record as defined by Practice Book § 60-4 only.

[3] The court, *A. dos Santos, J.*, appointed Attorney Anne R. Hoyt to be the child's guardian ad litem on May 19, 2010. Hoyt did not participate in the hearing on the defendant's motion to modify and did not appear in this court.

[4] "Family relations provides myriad services to help parties resolve custody and visitation disputes, including negotiations, conflict resolution conferences, and mediation." *Barros* v. *Barros*, 309 Conn. 499, 504, 72 A.3d 367 (2013).

[5] "Our Family Wizard" is a website that "offers web and mobile solutions for divorced or separated parents to communicate, reduce conflict, and reach resolutions on everyday do-parenting matters," available at https://www.ourfamilywizard.com/about (last visited 7/25/19).

[6] The defendant previously was represented by counsel.

[7] The child was born in 2008 and, therefore, at the time of trial was nine years old.

[8] On appeal, the plaintiff does not claim that the court's finding of changed circumstances is clearly erroneous.

[9] In a footnote, the court stated that a "failure to testify can be the basis for a negative inference," citing *Sosin* v. *Sosin*, Docket No. FA-03-0401416, 2005 WL 1023016, *10 n.13 (Conn. Super. March 22, 2005) (*Hon. Howard T. Owens, Jr.*, judge trial referee).

[10] On appeal, the plaintiff does not claim that the principles regarding parent-child relationships cited by the court are improper or inapplicable.

[11] The court denied the plaintiff's motion that the defendant submit an affidavit and request leave of the court before filing additional motions pursuant to Practice Book § 25-26 (g). The court also denied the plaintiff's motion for attorney's fees without prejudice, after finding that no evidence regarding attorney's fees was presented at the hearing. Although the appeal form references those rulings, the plaintiff did not brief any claims challenging those rulings on appeal. Accordingly, we consider those claims to be abandoned.

[12] On August 16, 2018, the plaintiff filed a motion for review in this court pursuant to Practice Book §§ 66-7 and 60-2. The plaintiff asked this court to issue an order that the trial court respond to the four articulation questions it had declined to address. This court granted the motion for review but denied the relief requested.

[13] The plaintiff also argues that the court's failure to credit Stutz' testimony overlooks the policy of the Family Services General Case Management, which requires a family relations counselor to prepare a report to the court when the period of supervised visitation is finished. We are not required to reach the plaintiff's argument to resolve his claim and, therefore, decline to address it.